ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 30 2003

at 4 o'clock and 15 min ___ M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Cr. No. 03-00244 SOM/BMK |
| Plaintiff, ) | |
| ) | ORDER DENYING DEFENDANT'S |
| vs. ) | MOTION TO SUPPRESS |
| BASHO ELLIOT, ) | |
| Defendant. ) | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

I.   INTRODUCTION.

Defendant Basho Elliot moves to suppress evidence seized by the Government during the search of a parcel. Elliot argues that the search was not supported by probable cause. This court DENIES Elliot's motion because probable cause existed for the issuance of the warrant.[1]

II.   FINDINGS OF FACT.

In an effort to rule promptly on the merits and to avoid the burden on the court's overextended court reporters, the court did not request and therefore does not have final transcripts of the live testimony, although the court has "rough" unedited copies of those transcripts. Therefore, in referring to that testimony in these findings of fact, this court is unable to give exact page and line citations to the testimony. The court

---

[1] For ease of reference in later proceedings, the court uses letter designations for the separate findings of fact and conclusions of law.

received testimony from one witness, Honolulu Police Detective Russel L. Woodward. Based on the live testimony and the exhibits received in evidence, the court finds the following by a preponderance of the evidence.[2]

     A.  Detective Woodward has nearly thirty years of experience as a police officer, much of it focusing on drug offenses. He has training in drug enforcement with state and federal agencies. He noted that law enforcement agents had identified several unusual characteristics about a brown cardboard box being sent by Federal Express from Burbank, California, to Lahaina on the island of Maui, in May 2003. For one thing, the sender's name and phone number on the airbill attached to the parcel were handwritten, and there was no address provided for the sender. Law enforcement agents found no record of the purported sender, "Marcos Santas," which suggested the use of an alias. Woodward learned that, when law enforcement agents called the number listed as the sender's, the woman who answered said she did not know who Marcos Santas was and was not aware that any parcel had been sent. Woodward also learned that the named recipient of the parcel, Adam Stevens, had two drug charges pending against him, that the phone number listed by the sender

---

[2] Whenever, in the following discussion, this court has mistakenly designated as conclusions of law what are really findings of fact, and vice versa, the court's statements shall have the effect they would have had if properly designated.

2

for Adam Stevens was not working, and that Adam Stevens did not live at the address listed for delivery. Woodward testified, however, that a trained drug dog did not alert on the parcel. See Woodward Testimony. The court found Woodward's testimony credible.

  B. Woodward submitted an affidavit in support of an application for a warrant to search the parcel. Woodward's affidavit detailed the foregoing evidence and outlined Woodward's extensive experience in drug investigations.

  C. On May 5, 2003, United States Magistrate Judge Kevin S.C. Chang issued a search warrant for the parcel, tracking no. 836936167045, sent from Burbank to Lahaina. Law enforcement agents executed the warrant and found that the parcel contained two rectangular bundles wrapped with duct tape and carbon paper and surrounded with pepper and talcum powder. A white powdery substance in the bundles field tested as cocaine and was later confirmed to be cocaine at a DEA laboratory in California.

  D. On May 6, 2003, Magistrate Judge Chang issued an anticipatory search warrant and a beeper warrant. Pursuant to the beeper warrant, law enforcement agents replaced the cocaine with pseudo drugs and installed a beeper in the package. The parcel was then delivered to the address on the parcel, which was where codefendant John Meston lived. Meston took the parcel to

3

Elliot's house, where the parcel was opened. Elliot and Meston were then arrested.

III.     CONCLUSIONS OF LAW.

A.   A judge's issuance of a search warrant should be upheld as long as, "under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed. In doubtful cases, preference should be given to the validity of the warrant." United States v. Schmidt, 947 F.2d 362, 371 (9th Cir. 1991) (internal quotation marks and citations omitted). A determination of probable cause should be accorded great deference and should not be reversed absent a finding of clear error. Id.

B.   "All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit under oath." United States v. Anderson, 453 F.2d 174, 175 (9th Cir. 1971). "Probable cause exists when the magistrate judge finds that, '[c]onsidering the totality of the circumstances,' there is 'a fair probability that contraband or evidence of a crime will be found.'" United States v. Reeves, 210 F.3d 1041, 1046 (9th Cir. 2000) (quoting United States v. Gil, 58 F.3d 1414, 1419 (9th Cir. 1995)). A judge may "rely on the training and experience of police officers" to determine whether there is probable cause. United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995).

4

C.  To challenge the validity of a search, a defendant must demonstrate that he has a reasonable expectation of privacy in the items or area searched. United States v. Padilla, 508 U.S. 77, 82 (1993) (per curium); see United States v. Sarkisian, 197 F.3d 966 (9th Cir. 1999), cert. denied, 530 U.S. 1220 (2000).

D.  The Government contends that Elliot lacks standing to challenge the validity of the search because he was neither the sender nor recipient of the parcel. Opp'n. at 8. In response, Elliot contends that he was the intended recipient of the package and therefore had a reasonable expectation of privacy in the parcel. Mot. at 1. Elliot relies upon United States v. Villarreal, 963 F.2d 770 (5th Cir. 1992).[3] In Villarreal, the Fifth Circuit held that the intended recipient of a package had an expectation of privacy, even though a fictitious name was listed as the recipient, because the false name may have been an alter ego of the defendant. Id. at 774. However, the Fifth Circuit has distinguished the situation in which the named

---

[3] While Elliot also cites United States v. Fernandez, 772 F.2d 495 (9th Cir. 1985), the facts of Fernandez bear no resemblance to the present case. In Fernandez, the defendant personally checked a bag on an airplane that he then boarded. At the baggage claim area, the defendant instructed another individual to retrieve the bag. The police intervened as the other individual moved toward the defendant with the bag. The Ninth Circuit concluded that the defendant had not abandoned the bag and therefore still had an expectation of privacy in it. Id. at 498.

5

recipient is an alter ego of the defendant from the situation in which the named recipient is another actual person. United States v. Pierce, 959 F.2d 1297, 1303 (5th Cir. 1992). In Pierce, the defendant lacked standing because the parcel was addressed not to "a fictitious entity, or to an alter ego" of the defendant, but rather to another actual individual. Id. The Fourth Circuit adopted a similar approach in United States v. Givens, 733 F.2d 339, 341 (4th Cir. 1984), holding that there was no privacy interest when a package was addressed not "to some entity, real or fictitious, which is their [defendants'] alter ego, but to actual third parties."

    E. In the present case, the parcel was addressed to an "Adam Stevens." There is no evidence showing that Adam Stevens is Elliot's alter ego. There is no evidence, for example, that Elliot made up the name Adam Stevens as a pseudonym for himself, never dreaming that a person with that name actually lived on Maui. At most, the court has a handwritten statement by codefendant John Meston, indicating that Elliot had, at times, paid Meston to pick up packages addressed to "Ron Designs" or "Steve something." Even if "Steve something" was Adam Stevens, Meston's note does not establish that Adam Stevens was a pseudonym. Elliot raises no challenge to the Government's assertion that Adam Stevens is an actual person, who incidently has two drug cases pending against him. Mot. at 2. Therefore,

under <u>Pierce</u>, even if Elliot could show that "he was the intended recipient of the package, this would not confer a legitimate expectation of privacy, because it was addressed to, and received by, another."  <u>Pierce</u>, 959 F.2d at 1303.[4]

        F.  <u>Pierce</u> and <u>Villarreal</u>, of course, are Fifth Circuit cases.  This court need not decide whether, in the Ninth Circuit, addressing a package to a real person destroys what would otherwise be a legitimate expectation of privacy.  Even if Elliot does have standing to bring this motion, his motion fails.  That is because, even assuming he has standing to raise the issue, Elliot is unpersuasive in arguing that there was no probable cause to support the warrant.

        G.  To issue a warrant, a magistrate judge must have a substantial basis for concluding that the affidavit in support of the warrant established probable cause.  <u>See</u> <u>United States v. Hernandez</u>, 937 F.2d 1490, 1494 (9th Cir. 1991).

---

[4] In <u>Pierce</u> the addressee of the package was the recipient, while in the present case Stevens was the addressee and Meston the recipient.  The present case is nevertheless analogous.  It involves a situation in which "A sends a package to B, the contents of which are ultimately intended for C."  <u>Givens</u>, 733 F.2d at 342.  Moreover, it is impossible to determine from the facts before the court whether Stevens may indeed have been a potential recipient of the parcel.  It is unclear whether Elliot was or was not connected to Stevens.  While Stevens was not at the address at the time of delivery, he may have been intended to be the direct recipient of the package.

H.  Magistrate Judge Chang had ample reason to believe that the parcel in question contained controlled substances. The affidavit in support of the warrant set out the following facts:

> 1) The parcel was sent from Burbank, California, to Lahaina on the island of Maui.
> 2) The label on the package was handwritten.
> 3) The sender provided no address.
> 4) When police called the number provided by the sender, the person at that number had no knowledge of the sender or of any package.
> 5) The number listed for the recipient was a nonworking number.
> 6) The named recipient had two drug charges pending against him.
> 7) The named recipient did not live at the address provided.
> 8) The officer leading the investigation had considerable experience and training in drug investigations.
> 9) A drug sniffing dog had not "alerted" on the package.

Gov. Ex. A.

I.  Elliot argues that the failure of the drug sniffing dog to alert on the parcel indicated a lack of probable cause that the parcel contained drugs. The Ninth Circuit implicitly rejected this argument in United States v. Gill, 280 F.3d 923, 926 (9th Cir. 2002). Noting that dogs are not trained to detect all types of illegal substances, the Ninth Circuit upheld the validity of a warrant, despite a drug dog's failure to alert to particular drugs. Id.[5]

---

[5] Moreover, a drug dog's failure to alert should not automatically preclude probable cause for a search given other suspicious factors. Drug traffickers are aware that packages may be sniffed and may take steps to mask odors.

J. The evidence found sufficient to establish probable cause in <u>Gill</u> is instructive for the present case. In <u>Gill</u>, the court considered the following: the package was sent from a "source" city for drugs, the address label was handwritten, aliases were used, and a phone number provided was not in service. These were key factors justifying the issuance of a warrant. <u>Id.</u> Here, these factors as well as others were present. There was sufficient evidence to issue the warrant.

K. Even if the warrant was invalid, the evidence seized should not be suppressed because the officers acted in good faith and in reasonable reliance on the warrant issued. <u>United States v. Leon</u>, 468 U.S. 897 (1984). Only if a "well-trained officer would have known the search was illegal despite the magistrate's authorization" should evidence seized pursuant to a warrant be suppressed. <u>Id.</u> at 922, n.23. Suppression may be warranted if:

> 1) the affiant misleads the magistrate;
> 2) the magistrate abandons the judicial function;
> 3) it is patently obvious no probable cause exists; and
> 4) it is facially obvious that the place and thing to be searched has not been described with particularity.

<u>Id.</u> Elliot makes no concrete, much less credible, allegation that any of these circumstances applies to the present case. There is no justification for suppression.

9

IV.     CONCLUSION

Based on the preceding findings of fact and conclusions of law, the court DENIES the motion to suppress.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 30, 2003.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

United States of America v. Basho Elliot, Cr. No. 03-00244 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS.