FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>BASHO ELLIOT, a.k.a. Bosch Elliot,<br>*Defendant-Appellant.* | No. 04-10571<br><br>D.C. No.<br>CR-03-00244-SOM<br><br>ORDER<br>AMENDING<br>OPINION AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted
November 21, 2005—Honolulu, Hawaii

Filed April 18, 2006
Amended August 28, 2006

Before: Myron H. Bright,* M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## SUMMARY

### Criminal Law and Procedure/Double Jeopardy

The court of appeals affirmed a judgment of the district court. The court held that faced with an evident conflict of interest between defense counsel and a key defense witness, and a defendant apparently attempting to manufacture an issue for appeal, a district court did not err in finding manifest necessity for a mistrial.

Appellant Basho Elliot was charged in district court in Hawaii with cocaine offenses. At his jury trial, during cross-examination of a key defense witness, an apparent conflict of interest arose involving Elliot's lead counsel, who appeared to have previously represented the witnesses in connection with relevant matters. Elliot and his counsel refused to acknowledge whether or not a conflict existed and generally declined to assist the court in its effort to untangle the situation. The witness ultimately invoked his Fifth Amendment rights and his testimony was stricken. At the same time, Elliot insisted upon continuing with the same lawyer and objected to the ordering of a mistrial, while refusing to waive his right to conflict-free representation. After thorough consideration, the district court concluded that the performance of Elliot's counsel was hindered by conflict, and that, if Elliot was convicted, this conflict would make reversal on appeal almost certain. Over Elliot's objection, the district court ordered a mistrial based on manifest necessity. A new trial date was set, and Elliot moved to dismiss on double jeopardy grounds. The district court denied the motion.

Elliot appealed, contending there was no conflict of interest, and that the Double Jeopardy Clause barred his further prosecution because there was no manifest necessity justifying the mistrial.

[1] The Double Jeopardy Clause of the Fifth Amendment protects a defendant's right not to be placed in jeopardy twice for the same offense. The defendant's right must be subordinate, in some instances, to the public's interest in fair trials designed to end in just judgments. [2] When a mistrial is ordered over a defendant's objection, retrial is permitted only if there was a "manifest necessity" for a mistrial. If an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the government proceed with its proof.

[3] The approach taken by the district court in Elliot's case weighed very heavily in favor of the court's determination. The court proceeded deliberately and made every effort to draw out the views of the parties, particularly Elliot, on the situation. [4] Facing a confusing situation, the court received no help from Elliot and his attorney. If Elliot did not like how the situation was resolved, he had to accept responsibility for failing to respond to the court's inquiries when he had the opportunity. The district court's careful and deliberate approach to the problem was laudable and supported its conclusion.

[5] The Sixth Amendment guarantees each criminal defendant the right to assistance of counsel unhindered by a conflict of interests. A conflict of interest can arise in cases of simultaneous or successive representation. [6] Hawaii Rule of Professional Conduct 1.9(a) forbids a lawyer who has represented one client in a given matter from representing another client in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation. [7] Even if their interests were not adverse to each other, Elliot's counsel's representation of the two clients represented a potential conflict of interest under Hawaii Rule of Professional Conduct 1.7(b), which states that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another

client or to a third person unless the client consents after con-
sultation. Elliot's counsel's representation of Elliot was argu-
ably limited by his former representation of the witness in the
same matter.

[8] The striking of the witness's testimony was clearly prej-
udicial to Elliot. A diligent attorney would have done all in
his power to keep the witness on the stand. [9] By refusing to
acknowledge the problem or to respond to the district court's
efforts to address the situation, Elliot's counsel effectively
provided Elliot with another ground for appeal, since it was
hard to avoid the inference that Elliot's counsel was moti-
vated in substantial part by his own self-interest in protecting
himself, in conflict with Elliot's best interests. [10] Under
these circumstances, the district court correctly determined
that Elliot's counsel had one or more conflicts of interest that
prevented him from properly representing Elliot. The district
court reasonably concluded that such a conflict, if raised by
Elliot on appeal, would have made reversal of any conviction
almost certain.

[11] The district court did not err in determining that there
was manifest necessity for the mistrial, given Elliot's coun-
sel's conflict of interest and Elliot's attempt to have it both
ways. [12] Faced with conflicts that had hindered Elliot's
counsel's ability to adequately represent Elliot, and with
Elliot's refusal to waive the conflict while insisting on contin-
uing with counsel as his lawyer, the district court concluded
appropriately that there was manifest necessity for a mistrial.
[13] Faced with an evident conflict of interest and a defendant
apparently attempting to manufacture an issue for appeal, the
district court did not err in finding manifest necessity for a
mistrial. In order to preserve Elliot's right to conflict-free rep-
resentation, to save valuable time and resources of the court
and the jurors, and to serve the ends of public justice, the dis-
trict court was justified in declaring a mistrial. Elliot's motion
to dismiss was properly denied, and he could be tried on the

UNITED STATES v. ELLIOT                    10245

pending charges. The judgment of the district court had to be affirmed.

## COUNSEL

Joseph T. Vodnoy (argued) and Joseph F. Walsh, Los Angeles, California, for the defendant-appellant.

Edward H. Kubo, Jr., U.S. Attorney, and Beverly Wee Sameshima, Assistant U.S. Attorney (argued), Honolulu, Hawaii, for the plaintiff-appellee.

## ORDER

The opinion filed on April 18, 2006, is amended as follows:

Slip op. at 4369, after first full paragraph (after the third full paragraph on 444 F.3d at 1194), before the paragraph which begins "Under these circumstances . . . ," add two new paragraphs:

> Elliot argues now that Hevia could not have been persuaded to waive his rights, that Hevia's testimony was properly stricken, and that had the trial proceeded and resulted in Elliot's conviction, an appeal based on Elliot's conflict would have failed because Elliot could not have demonstrated prejudice. At this point, of course, we do not know whether a conflict-free attorney could have succeeded in retaining Hevia's testimony, either by persuading Hevia to continue with his testimony or by persuading the court not to strike it, but he surely would have tried more than Gordon did.

> Moreover, Elliot's current argument understates the argument Elliot would have been able to make

on appeal that he had been prejudiced, if the effort to retain Hevia's testimony failed and the trial had continued and resulted in his conviction. During his direct examination, Hevia had explicitly waived his rights, but had done so, the district court fairly determined, in apparent reliance upon Gordon. It was Gordon's conflict that caused the court to reopen that subject, resulting in Hevia's subsequent invocation of the Fifth Amendment midway in his testimony. But for Gordon's conflict, it must be presumed that either (1) the court would not have made those inquiries or allowed Hevia to withdraw his waiver, such that Hevia would have testified in full, permitting Elliot to benefit from his testimony, or (2) Hevia would not have testified at all, leading Èlliot's attorney to present a different defense, one that was not organized to feature Hevia as Elliot's star witness. Either way, Elliot's defense would have been in much better shape. Instead, Elliot found himself at the end of trial with the witness on whose testimony the defense case was focused suddenly eliminated. A conflict-free attorney would not have put Elliot into that position, to his prejudice, as Elliot surely would have argued on appeal, and it was not unreasonable for the district court to anticipate that such an argument would prevail.

With the opinion as amended, the panel has voted to deny the petition for rehearing. Judge McKeown and Judge Clifton voted to deny the petition for rehearing en banc and Judge Bright so recommends.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc, filed May 1, 2006, are DENIED. No further petition for rehearing and/or petition for rehearing en banc may be filed.

## OPINION

CLIFTON, Circuit Judge:

Defendant Basho Elliot is charged with cocaine offenses. At jury trial, during cross-examination of a defense witness, an apparent conflict of interest arose involving Elliot's lead counsel, who appeared to have previously represented one of the defendant's key witnesses in connection with relevant matters. Elliot and his counsel refused to acknowledge whether or not a conflict existed and generally declined to assist the court in its effort to untangle the surprising and unusual situation. At the same time, Elliot insisted upon continuing with the same lawyer and objected to the ordering of a mistrial, while refusing to waive his right to conflict-free representation. After thorough consideration, the district court concluded that the performance of Elliot's counsel was hindered by conflict, and that, if Elliot was convicted, this conflict would make reversal on appeal almost certain. Over Elliot's objection, the district court ordered a mistrial based on manifest necessity. Elliot now contends there was no conflict of interest, and he moved to dismiss, arguing that the Double Jeopardy Clause bars his further prosecution because there was no manifest necessity justifying the mistrial. We disagree and affirm the district court's denial of Elliot's motion to dismiss.

## I.  Background

In a Federal Express hub in California on May 1, 2003, a narcotics interdiction task force identified a suspicious package which, after a search warrant was obtained, was found to contain two kilograms (approximately four and one-half pounds) of cocaine. A controlled delivery of the package was arranged. A few days later, an undercover police officer delivered the package to the address on the parcel, which was the home of John Meston in Lahaina, Maui, Hawaii. After receiving the package, Meston then delivered it to Elliot at Elliot's

home, also in Lahaina. Shortly thereafter, the police arrested them both. Elliott was indicted and put on trial on two counts alleging violation of 21 U.S.C. §§ 841(a)(1) and 846: one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, and one count of attempted possession with intent to distribute 500 grams or more of cocaine.

At Elliot's trial Meston testified as a government witness that Elliot gave him $2,000 to receive the package, as Elliot had done on prior occasions. During the defense case, Sergio Hevia was called as a witness by Elliot to contradict Meston's testimony. In response to an evidentiary objection early in Hevia's testimony, Elliot's lead counsel, Richard Gordon, explained to the district court that he expected Hevia to testify that Meston had himself called Hevia and asked him to mail the package containing the cocaine to Hawaii. The court became concerned that Hevia might be incriminating himself and asked Gordon whether Hevia had an attorney. Gordon replied, in what turned out to be a less than forthcoming fashion, "[n]ot here, no, Your Honor." The district court then informed Hevia of his Fifth Amendment rights and his right to counsel, but Hevia waived his rights, saying he did not want to speak to an attorney. Hevia proceeded to testify that Meston called him and asked Hevia to pick up a box from a man named Randy and send it via Federal Express. Hevia further testified that he called Meston a few weeks after mailing the package but that Meston sounded strange, telling Hevia that something had happened and not to call anymore.

On cross-examination, Hevia was asked if he ever learned what was in the package. He responded that he found out through attorney Gordon. He testified that a few months after his strange phone call with Meston, he contacted Gordon out of concern over Meston's behavior. He also explained that Gordon had been his attorney in connection with some prior traffic violations.

A discussion then ensued out of the presence of Hevia and the jury. The district court, previously unaware of any attorney-client relationship between Hevia and Gordon, asked Gordon to explain how he had come to represent Elliot in a matter about which he had previously obtained confidential information from and given legal advice to Hevia. Gordon refused to answer the court's questions about his relationship with Hevia. "I don't think I can answer any of that, Your Honor. . . . I think I have issues of confidentiality, and I can't — can't go into that at all." On inquiry by the district court concerning Gordon's apparent simultaneous representation of Elliot and Hevia in the same matter, Gordon admitted that he did not have a written conflict waiver from either Elliot or Hevia.

The court expressed concern that in waiving his rights, Hevia might have been influenced by Gordon's presence, thinking that he had his own counsel present. The value of Hevia's testimony to Gordon was to indicate that Meston, not Elliot, was the organizer of the drug delivery. Since in his capacity as Elliot's defense counsel Gordon would be encouraging Hevia to make self-incriminating statements, the court indicated that it had become "very concerned" and was inclined to appoint counsel for Hevia.

Hevia returned and the court questioned him about his relationship with Gordon. Hevia testified that he sought legal advice about the parcel at issue in this case when he called Gordon about Meston. Upon hearing this, the court appointed counsel for Hevia.

After consulting with his new attorney, Hevia invoked his Fifth Amendment rights and declined to testify further, which prevented the government from finishing its cross-examination. The court then proposed that Hevia's testimony be stricken due to the lack of cross-examination. Gordon objected on behalf of Elliot, noting that "Mr. Hevia's testimony is relevant and tends to exonerate the defendant." Gor-

don was unresponsive to the court's inquiries about the basis of his objection or why the court should ignore the fact that the government had not had its chance to cross-examine Hevia. The court called the jury back into the courtroom and struck Hevia's testimony, instructing the jury not to consider it.

At that point, the trial was about to be recessed for four days for a break that had already been planned. Before proceedings ended on the day Hevia's testimony was stricken, Gordon indicated that he would be moving on behalf of Elliot for a mistrial but would research the matter further during the interim. Ultimately, Elliot did not file such a motion. When Elliot opted not to seek a mistrial, the government sent a letter to the court urging it to declare a mistrial sua sponte. On the day before the trial was set to resume, the court faxed a letter to both attorneys posing a series of questions relating to Gordon's conflict of interest, the effect of striking Hevia's testimony, and the possibility of a mistrial.[1] The government responded to these inquiries, but Gordon did not.

At a conference on the day the trial was to resume, Elliot objected, through his attorney Gordon, to declaration of a mistrial. In sum, Elliot maintained that he wished to continue the trial with Gordon as his counsel, that he was not waiving any of his rights (including the right to conflict-free counsel), and that he was not taking a position as to whether or not Gordon had a conflict of interest. The court extensively questioned Gordon and Elliot regarding the conflict. Gordon stated that Elliot was "not waiving anything" and that he was "reserving all his rights." The court asked specifically whether

---

[1] The questions asked in part: "Is a mistrial warranted given the particular circumstances before us . . . In the first place, here we have a defense witness, not, as in [government's counsel's] cases, a government witness or someone whose guilt might exonerate the defendant. In the second place, we have a witness whose testimony has been stricken. Please come to tomorrow's proceeding prepared to discuss whether these circumstances affect the advisability of a mistrial."

Elliot was waiving any conflict of interest that Gordon may have created, to which Gordon replied, "Mr. Elliot is specifically not waiving anything."

The court repeatedly inquired as to Elliot's position on whether or not Gordon had a conflict of interest, but Gordon refused to answer the question. The court asked if a potential conflict of interest could justify a mistrial or whether an actual conflict was required, and Elliot refused to take a position on that question, either. The court pointedly asked how Elliot wanted to go forward with the trial if he insisted on exercising his right to conflict-free counsel. Again, Gordon failed to explain his position, which rights Elliot was reserving, and whether Gordon had a conflict. Ultimately, Elliot took no position on whether a conflict existed and what effect, if any, striking Hevia's testimony had on declaring a mistrial.

The court tried to clarify Gordon's position, stating "So you are not admitting nor are you denying that you are in a conflict-of-interest position," to which Gordon replied, "I'm not taking a position; that's correct." The court then expressed concern that Gordon, for his client, "want[ed] [to have his] cake and eat it too." The court continued:

> You want to go forward with the trial. If, in fact, Mr. Elliot is convicted, then Mr. Elliot will then declare that you were in a conflict of interest and take an appeal. This is a waste of the court's time, a waste of valuable jurors' time, and I really feel like there's just a ton of games-playing right now.

The court ultimately concluded that there was manifest necessity for a mistrial, orally declared a mistrial, and discharged the jury. Soon thereafter, the court filed a written order which explained its reasons for declaring a mistrial. The order stated that the court found a manifest necessity to declare a mistrial in order to (1) ensure that Elliot, who had not waived his objection to any conflict of interest, would be

10252          UNITED STATES v. ELLIOT

represented by conflict-free counsel, (2) avoid the undermining of public confidence in the integrity of the legal system, and (3) avoid a waste of the resources of the court, the jurors, and the parties. It observed that Gordon's obligation to defend Elliot was compromised not only by the conflict presented by his prior representation of Hevia but also by his interest in protecting himself against charges of unethical conduct. The court expressly noted that Gordon's refusal to respond to the court's inquiries or to take clear positions may have been primarily motivated by a desire to protect himself, to his client's detriment. The order concluded that if trial proceeded and Elliot was found guilty, he would appeal on conflict-of-interest grounds and a retrial would almost certainly be ordered. The order also noted the court's "overall concern" about the defense case in chief, observing that the testimony of the three allegedly percipient witnesses offered by Defendant was "utterly implausible." If the trial continued, it is apparent that the district court expected it to result in a conviction, especially after the striking of Hevia's testimony.

Gordon thereafter voluntarily withdrew as counsel and Elliot hired a new attorney. A new trial date was set, and Elliot filed a motion to dismiss on double jeopardy grounds. The district court denied the motion to dismiss, concluding that Elliot's arguments had been waived and that there was manifest necessity for declaring a mistrial at Elliot's first trial. Elliot appealed.

## II.  Discussion

Denial of a defendant's pretrial motion to dismiss an indictment on double jeopardy grounds is immediately appealable as a collateral order under 28 U.S.C. § 1291. *See Richardson v. United States*, 468 U.S. 317, 321 (1984) ("Obviously, [this] aspec[t] of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken. . . . [I]f a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full

protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.") (citing *Abney v. United States*, 431 U.S. 651, 662 (1977)); *see also United States v. Hickey*, 367 F.3d 888, 891 (9th Cir. 2004) (reiterating the court's interlocutory appellate jurisdiction over colorable double jeopardy claims).

## A.   *Double jeopardy*

[1] The Double Jeopardy Clause of the Fifth Amendment protects a defendant's right not to be placed in jeopardy twice for the same offense. *Arizona v. Washington*, 434 U.S. 497, 503 (1978). In a jury trial, jeopardy attaches when the jury is empaneled and sworn. *See Crest v. Bretz*, 437 U.S. 28, 35 (1978). A criminal defendant has "the right to have the jury first empaneled to try [him] reach a verdict." *United States v. Bonas*, 344 F.3d 945, 947-48 (9th Cir. 2003) (citing *United States v. Bates*, 917 F.2d 388, 392 (9th Cir. 1990)). A jury had already been empaneled and sworn in Elliot's first trial, but that does not mean that another jury can never be empaneled for a retrial. The defendant's right must be subordinate, in some instances, to "the public's interest in fair trials designed to end in just judgments." *United States v. Jorn*, 400 U.S. 470, 480 (1971); *see Thomas v. Municipal Court of the Antelope Valley J.D.*, 878 F.2d 285, 287 (9th Cir. 1989) ("Balanced against the defendant's right, however, is the right of society to be protected against those guilty of crimes by enabling society to retry the accused under certain circumstances.").

[2] When, as here, a mistrial is ordered over a defendant's objection, retrial is permitted only if there was a "manifest necessity" for a mistrial. *Washington*, 434 U.S. at 505. A reviewing court must determine whether such a manifest necessity existed at the time a mistrial was declared by the district court. In so doing, we should consider that "[t]he words 'manifest necessity' . . . do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Thomas*, 878 F.2d

at 287 (internal quotations omitted). Rather than a strict standard, the Supreme Court has described a general approach to be taken by trial judges considering a mistrial. "If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the government proceed with its proof . . . ." *Illinois v. Somerville*, 410 U.S. 458, 464 (1973).

## B.    The district court's approach

We have also been directed to consider the manner in which the district court made its decision. "The Supreme Court and appellate courts have relied on four indicators in determining whether the trial court abused its discretion. Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial?" *Bates*, 917 F.2d at 395-96. If a district court engages in this type of effort, it is much more likely to have exercised sound discretion in concluding that manifest necessity for a mistrial existed. *See id.* at 396.

[3] We start with the approach taken by the district court, because in this case it weighs very heavily in favor of the court's determination. The court proceeded deliberately and made every effort to draw out the views of the parties, particularly the defendant, on the situation. Elliot now argues on appeal that there was no conflict of interest, at least not after Hevia's testimony was stricken, and that a reversal of any conviction on appeal was far from a certainty. We do not agree and will deal with those arguments below, but it cannot be overlooked that Elliot did not take those positions at the time, let alone argue for them.

At that point in time it appeared to the district court that Elliot's defense was in disarray, with the testimony of his

main witness stricken and his other key witnesses offering
testimony which appeared "utterly implausible" to the court.
It is not surprising that the court came to conclude that the
defense was deliberately covering the risk of an adverse ver-
dict by trying to set up an issue for appeal, an approach which
motivated Elliot and his attorney to be unresponsive and
unhelpful in dealing with the situation. Nonetheless, the court
continued to invite comments and suggestions from Elliot and
Gordon, to no avail.

[4] Facing a confusing situation, the court received no help
from Elliot and his attorney. If Elliot did not like how the situ-
ation was resolved, he must accept responsibility for failing
to respond to the court's inquiries when he had the opportu-
nity. The district court's careful and deliberate approach to the
problem was laudable and supports its conclusion.

## C.   Conflict of interest and certainty of reversal

[5] The Sixth Amendment "guarantees each criminal defen-
dant the right to assistance of counsel 'unhindered by a con-
flict of interests.' " *Thomas*, 878 F.2d at 288 (quoting *United
States v. Wheat*, 813 F.2d 1399, 1402 (9th Cir. 1987), *aff'd on
other grounds*, 486 U.S. 153 (1987)). A conflict of interest
can arise in cases of simultaneous or successive representa-
tion. *Id.* at 288. Typically, in order to obtain a reversal of con-
viction a "[d]efendant must show 'that an actual conflict of
interest adversely affected his lawyer's performance,' "
*United States v. Crespo de Llano*, 830 F.2d 1532, 1540 (9th
Cir. 1987) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348
(1980)).

[6] During cross-examination, Hevia testified that he had
sought and received Gordon's legal advice regarding the
package at issue in this case. At this point it became clear to
the district court that there was, at a minimum, a potential
conflict of interest arising from Gordon's successive represen-
tation of two clients in the same matter. Hawaii Rule of Pro-

fessional Conduct 1.9(a) forbids a lawyer who has represented one client in a given matter from representing another client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Assuming Hevia's testimony to be true, Hevia sent the package containing cocaine. Elliot ultimately received it. The best defense available to each of them would be that they did not have knowledge of the package's contents, a defense that would be buttressed by placing the blame on the other. In that way, their interests are clearly adverse. Gordon did not obtain a waiver of this conflict from either Hevia or Elliot.

[7] Even if their interests were not adverse to each other, Gordon's representation of the two clients represented a potential conflict of interest under Hawaii Rule of Professional Conduct 1.7(b), which states that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person . . . unless the client consents after consultation." To represent Elliot adequately, Gordon needed to interview, aggressively examine, and possibly place blame on Hevia, all of which clashed with his attorney-client relationship with Hevia. As such, Gordon's representation of Elliot was arguably limited by his former representation of Hevia in the same matter.

[8] The striking of Hevia's testimony was clearly prejudicial to Elliot. The loss of Hevia's testimony prevented the jury from considering evidence that contradicted the government's star witness, Meston. Hevia formed the backbone of Elliot's defense, and his absence greatly diminished whatever prospects there were for an acquittal. Clients should expect their lawyer to "use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf." *Thomas*, 878 F.2d at 289. Had Elliot been represented by conflict-free counsel, his

attorney could have spent considerable efforts ensuring that Hevia testified. A diligent attorney would have done all in his power to keep Hevia on the stand.

[9] But Gordon was not in a position to do that. By that time, he had his own problem, in the form of his apparent violations of the rules of professional conduct, and that represented still another conflict with his obligation to Elliot. Perhaps concerned about concealing his own misconduct, Gordon did not diligently attempt to prevent the court from striking Hevia's testimony. He objected but refused to address the court's concerns when stating his objection. The Supreme Court has stated that the attorney is in the best position to determine when a conflict exists and so "defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978). Gordon did not do so. To the contrary, by refusing to acknowledge the problem or to respond to the district court's efforts to address the situation, Gordon effectively provided Elliot with another ground for appeal, since it is hard to avoid the inference that Gordon was motivated in substantial part by his own self-interest in protecting himself, in conflict with Elliot's best interests.

Elliot argues now that Hevia could not have been persuaded to waive his rights, that Hevia's testimony was properly stricken, and that had the trial proceeded and resulted in Elliot's conviction, an appeal based on Elliot's conflict would have failed because Elliot could not have demonstrated prejudice. At this point, of course, we do not know whether a conflict-free attorney could have succeeded in retaining Hevia's testimony, either by persuading Hevia to continue with his testimony or by persuading the court not to strike it, but he surely would have tried more than Gordon did.

Moreover, Elliot's current argument understates the argument Elliot would have been able to make on appeal that he had been prejudiced, if the effort to retain Hevia's testimony

failed and the trial had continued and resulted in his conviction. During his direct examination, Hevia had explicitly waived his rights, but had done so, the district court fairly determined, in apparent reliance upon Gordon. It was Gordon's conflict that caused the court to reopen that subject, resulting in Hevia's subsequent invocation of the Fifth Amendment midway in his testimony. But for Gordon's conflict, it must be presumed that either (1) the court would not have made those inquiries or allowed Hevia to withdraw his waiver, such that Hevia would have testified in full, permitting Elliot to benefit from his testimony, or (2) Hevia would not have testified at all, leading Elliot's attorney to present a different defense, one that was not organized to feature Hevia as Elliot's star witness. Either way, Elliot's defense would have been in much better shape. Instead, Elliot found himself at the end of trial with the witness on whose testimony the defense case was focused suddenly eliminated. A conflict-free attorney would not have put Elliot into that position, to his prejudice, as Elliot surely would have argued on appeal, and it was not unreasonable for the district court to anticipate that such an argument would prevail.

[10] Under these circumstances, the district court correctly determined that Gordon had one or more conflicts of interest that prevented him from properly representing Elliot. "Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest." *United States v. Henke*, 222 F.3d 633, 638 (9th Cir. 2000) (per curiam). The district court reasonably concluded that such a conflict, if raised by Elliot on appeal, would have made reversal of any conviction almost certain.

D.  *Manifest necessity for a mistrial*

Rather than hastily declaring a mistrial, the district court made every effort to resolve the conflict and continue the trial. The court asked Elliot numerous times if he wanted to

waive any conflict of interest and continue with Gordon as counsel. Elliot responded, through Gordon, that he was "not waiving anything" and reserving "all" of his rights, even as he insisted upon keeping Gordon as his lawyer. The district court spent considerable time explaining to Elliot why it believed there was at least a potential conflict of interest. Even after the warnings of the court, though, Elliot would take no position on whether a conflict existed and expressly would not waive his right to contest any conflict on appeal.

We agree with the assessment of the district court that Elliot was trying to have it both ways. If the trial continued and Elliot was found guilty, he would have had a built-in issue for appeal, namely, that he had been denied his right to conflict-free representation. *See Thomas*, 878 F.2d at 290. Conversely, if a mistrial was declared he would, as he does now, claim that there was no conflict that necessitated a mistrial. This court has warned that "[w]e should be aware of the trial court's prospects of being 'whip-sawed' by assertions of error no matter which way it rules." *Id.* This was exactly the prospect facing the district court in this case.

[11] The district court did not err in determining that there was manifest necessity for the mistrial, given Gordon's conflict of interest and Elliot's attempt to have it both ways. *See United States v. Sammaripa*, 55 F.3d 433, 435 (9th Cir. 1995) ("[W]hen the breakdown between attorney and client becomes apparent *after* jeopardy attaches, there is manifest necessity to declare a mistrial.") (citing *Thomas*, 878 F.2d at 288 n. 2).

We have held that manifest necessity existed for a mistrial under similar circumstances. In *Thomas*, an attorney defended a husband charged with criminal assault and battery of his wife. 878 F.2d at 286. The attorney had previously represented the wife in her divorce from a former husband. *Id.* One of the husband's primary defenses was that the wife fabricated the assault charges in retaliation for allegations by the

husband that the wife was a bigamist, having married him before her divorce from her first husband became final. In a discussion in chambers, the lawyer admitted that he had represented the wife in the prior divorce. The attorney denied the existence of a conflict and offered to abandon the bigamy motive. Because the husband refused to waive the conflict and would not agree to a mistrial, the trial court, as in the present case, declared a mistrial sua sponte. At retrial, the husband claimed that double jeopardy barred his further prosecution because there was no manifest necessity for a mistrial. We held that the lawyer had "divided loyalties which could adversely affect his ability diligently to defend" the husband, and "[h]ad the trial court simply proceeded with the trial, reversible error would have been built in because . . . [the husband] . . . did not have effective, conflict-free representation." *Id.* at 290. Due to the evident conflict of interest resulting from the husband's counsel's inability to adequately defend him (having lost the bigamy motive), and the husband's refusal to waive the conflict or agree to a mistrial, we concluded that the district court did not err in declaring a mistrial. *Id.*

[12] In the present case the district court was placed in the same position by Elliot and Gordon. Faced with conflicts that had hindered Gordon's ability to adequately represent Elliot, and with Elliot's refusal to waive the conflict while insisting on continuing with Gordon as his lawyer, the district court concluded appropriately that there was manifest necessity for a mistrial.

## III.  Conclusion

[13] Faced with an evident conflict of interest and a defendant apparently attempting to manufacture an issue for appeal, the district court did not err in finding manifest necessity for a mistrial. Elliot insisted upon continuing with Gordon as his lawyer but would not agree to a waiver of the conflicts faced by Gordon. The district court took great care in addressing the

UNITED STATES v. ELLIOT                              10261

situation. It was a "scrupulous exercise of judicial discretion"
which led it "to the conclusion that the ends of public justice
would not be served by a continuation of the proceedings."
*Jorn*, 400 U.S. at 485. In order to preserve Elliot's right to
conflict-free representation, to save valuable time and
resources of the court and the jurors, and to serve the ends of
public justice, the district court was justified in declaring a
mistrial. Elliot's motion to dismiss was properly denied, and
he may be tried on the pending charges.

**AFFIRMED**.

MOATT   INVATT
CLOSED

i

INTERNAL USE ONLY: Proceedings include all events.
04-10571 USA v. Elliot

UNITED STATES OF AMERICA               Beverly Wee Sameshima, AUSA
      Plaintiff - Appellee            FAX 808/541-2958
                                       808/541-2850
                                       Suite 6-100
                                       [COR LD NTC aus]
                                       USH - OFFICE OF THE U.S.
                                       ATTORNEY
                                       PJKK Federal Building
                                       300 Ala Moana Blvd.
                                       P.O. Box 50183
                                       Honolulu, HI 96850


      v.


BASHO ELLIOT, a.k.a. Bosch            Joseph F. Walsh, Esq.
Elliot                                 FAX 213/489-4700
      Defendant - Appellant           213/627-1793
                                       Ste. 1200
                                       [COR LD NTC ret]
                                       Joseph T. Vodnoy, Esq.
                                       FAX          213
                                       213/627-1736
                                       Suite 1200
                                       [COR LD NTC ret]
                                       316 W. Second St.
                                       Los Angeles, CA 90012