EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808)541-2850
Facsimile:  (808)541-2958
E-mail:  Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00244-01 SOM |
| | ) | |
| Plaintiff, | ) | UNITED STATES OF AMERICA'S |
| | ) | MEMORANDUM IN OPPOSITION TO |
| vs. | ) | DEFENDANT BASHO ELLIOT'S |
| | ) | MOTION IN LIMINE CONCERNING |
| BASHO ELLIOT,    (01) | ) | USE OF EVIDENCE OF DEFENDANT'S |
| aka "Bosch Elliot," | ) | SUPPRESSED STATEMENTS; |
| | ) | EXHIBITS "A" - "F;" |
| Defendant. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | Date:   February 15, 2007 |
| | ) | Time:   9:00 a.m. |
| | ) | Judge:  Susan Oki Mollway |

UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO
DEFENDANT BASHO ELLIOT'S MOTION IN LIMINE CONCERNING
USE OF EVIDENCE OF DEFENDANT'S SUPPRESSED STATEMENTS

The United States of America ("government") opposes

Defendant Basho Elliot's ("Elliot") motion on the grounds that

this Court has already decided the issue against Elliot and that

ruling is the law of the case.  Although Elliot frames the issue
as an impeachment issue rather than an "opening the door" issue,
there are no new facts or case authority which would warrant a
different ruling.  Elliot claims that using his inculpatory
statements made in response to Special Agent Rich Jones'
"cooperation speech" would constitute improper impeachment of its
expert witness Frank Panessa under <u>James v. Illinois</u>, 493 U.S.
307 (1990).  Accordingly, Elliot asks the Court to reverse its
original ruling on this issue and preclude the government from
introducing Elliot's statement in explaining why the law
enforcement agents took certain actions in connection with the
investigation.  The government submits that Elliot's presentation
of the issue is misleading and the facts in <u>James</u> are
distinguishable.  A brief chronology of how this issue was raised
during the first trial and the Court's ruling of the issue will
highlight why this Court's original ruling should stand.

    1.  **<u>Chronology</u>**

       Elliot's statements to law enforcement officers were
the subjects of a motion to suppress prior to trial.  Elliot made
a pre-Miranda statement after his arrest to Special Agent Richard
Jones in response to Jones' "cooperation speech" in which he told
Jones that he could not cooperate with law enforcement because he
was afraid he would be killed.  He also stated that it was his

deal and he would take responsibility for the drugs.  The second statement was made by Elliot spontaneously to Task Force Officer Tanya Tano after he was Mirandized and was waiting for the search of his residence to be completed.  Elliot told Tano that he was stupid for doing "this" and that he tried to take the "easy way" because his father helped him purchase his house and he was having trouble making the mortgage payments.

At the suppression hearing, the government advised Court and counsel that it would not use the first statement in its case-in-chief, but would use it to impeach Elliot should he take the stand to testify.  Based upon this proffer, the Court did not rule on the voluntariness of Elliot's statement to Agent Jones.  After an evidentiary hearing, the District Court denied Elliot's request to dismiss the Indictment for Rule 16 violations and denied the suppression motion of Elliot's statements made to TFO Tano.  (A true and correct copy of the District Court's ruling is attached hereto and incorporated herein by reference as Exhibit "A.")

Prior to trial, Elliot disclosed that its expert, Frank Panessa, a former DEA agent, intended to testify, inter alia, that the agents' investigation in this case was flawed because they failed to thoroughly investigate John Meston and failed to conduct a thorough search of his house.  (See paragraphs 3,6 and

3

10 of Richard Gordon's letter dated April 2, 2004 which is attached as Exhibit "B" to Elliot's instant motion.)  The government objected to the testimony because it was relevant in that it did not have any probative value of Elliot's guilt or innocence and filed a motion in limine and brief asserting that if Panessa testified that government agents failed to pursue certain investigative steps, including a search warrant or further investigation of John Meston, this would open the door to testimony that the government had (at that time) obtained confessions from both Elliot and Meston and therefore reasonably concluded that these other investigative efforts were unnecessary.  (A true and correct copy of the government's brief is attached hereto as Exhibit "B.")[1]  This issue was discussed at a Pretrial Conference before the court on April 1, 2004 and at a telephone conference on April 2, 2004.  (True and correct copies of these proceedings are attached hereto respectively as Exhibits "C" and "D.")  On April 5, 2004, and on April 9, 2004, the parties discussed the issue further and the Court decided that if Panessa opened the door by testifying that the agents did not do their job because they did not adequately corroborate Meston's

---

[1]  The government filed a motion in limine regarding Panessa's testimony on March 22, 2004.  The government refiled this motion and attaches a copy of the original motion hereto as part of Exhibit "B."

4

testimony or conduct a thorough investigation, the government should be allowed to introduce the fact that Elliot had confessed to his involvement in the offense.  (True and correct copies of these transcripts are attached hereto respectively as Exhibits "E" and "F.")

     2.  **Law of the Case**

        Elliot's motion is nothing more than an attempt to relitigate the Court's earlier ruling which was decided against him in the earlier trial.  The issue is whether Panessa's testimony about the agents' allegedly deficient investigation would "open the door" to references that Elliot had admitted his guilt, thereby leading the agents to conclude that they had the perpetrator(s) of the offense and did not need to conduct a further search warrant or expend further investigative resources to solve the case.  This Court has already ruled that the door would be opened if this topic was raised.  This Court's decision was premised in part on the fact that the purpose of the exclusionary rule – to deter police misconduct – would not be served in the instant situation.  (See pages 4-6 through 4-28, Exhibit "F.")[2]  To grant Elliot's motion would be to allow the

---

[2]  This was raised again in the context of Detective Woodward's testimony and whether he would be allowed to testify that he did not believe it necessary to search Meston's house thoroughly or obtain a search warrant because Meston and Elliot had both

defense to engage in a perversion of the truth under the guise of furthering the goals of the exclusionary rule. The jury would receive a distorted view of the evidence. The previous ruling should stand as it is the law of the case.

In <u>United States v. Alexander</u>, 106 F.3d 874 (9th Cir. 1997), the court granted the defendant's motion to suppress his confession. The case ended in a mistrial based upon the jury's inability to reach a verdict. Upon retrial, the government sought reconsideration of the court's original suppression order. Judge Conti overruled the suppression order, allowing evidence of the confession at the second trial. The Ninth Circuit reversed the conviction and remanded for a new trial because of the district court's departure from the law of the case. <u>Id.</u> at 874. Under the "law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." <u>Id.</u>; <u>Thomas v. Bible</u>, 983 F.2d 152, 154 (9th Cir.), <u>cert. denied</u>, 508 U.S. 951 (1993). A court has discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has

---

confessed and corroborated each other's testimony. In his view, the case had been solved at that time and there was no need to commit other investigative resources.

occurred; (3) the evidence on remand is substantially different;
(4) other changed circumstances exist; or (5) manifest injustice
would otherwise result.  Failure to apply the doctrine of the law
of the case absent one of the requisite conditions constitutes an
abuse of discretion.  <u>Id.</u>

        In this case, neither of the five circumstances
warranting a departure from the Court's original ruling exists.
The <u>James</u> case advanced by Elliot is not intervening, new law
which has occurred since the original trial.  Moreover, as is
discussed below, the <u>James</u> holding is inopposite and inapplicable
here.  None of the other three factors are present.  In fact, to
allow Elliot to proffer unrebutted expert opinion which is
premised on a distorted and inaccurate view of the evidence would
result in injustice and would be a perversion of the deterrent
purpose of the exclusionary rule.  This Court relied on <u>People v.</u>
<u>Payne</u>, 456 N.E.2d 44 (1983) in addressing this issue during the
first trial.  (See Exhibit "F," pages 4-6 through 4-8.)  There,
the state Supreme Court of Illinois found that there was no error
in allowing introduction of a gun which had been previously
suppressed to rebut the false implication created by the defense
in cross-examining a police officer regarding a search.  The
defense had "opened the door" when cross-examination of the
officer led to the false impression that nothing connected to the

7

robbery was recovered during a search of the defendant's apartment.  Id. at 46-47.

    This Court also cited to Castillo v. Fay, 350 F.2d 400 (2nd Cir. 1965) which addressed the very narrow issue of whether the defense had "opened the door" when it questioned the police officer about whether he recovered drugs from a search of the defendant's house.  The Court concluded that the defense strategy was to pursue a line of questioning which was favorable to the defendant, but then to seek refuge under the exclusionary rule when the government tried to offer a more complete, balanced view of the facts.

    In this case, to allow Panessa to attack the agents' investigation by creating a false, unrebutted impression that they failed to take certain steps in the investigation because they were negligent or deficient, when in fact, they had obtained confessions from the two individuals involved in the offense would likewise compromise the integrity of the judicial system and be inconsistent with the policies underlying the exclusionary rule and the reasons for excluding the confession in the first place.

    Elliot relies exclusively on the James case for the proposition that suppressed evidence cannot be used to impeach a defense witness, as opposed to the defendant.  In James, the

8

suppressed evidence was the defendant's statement that he had changed his hair color from red to black after committing the murder to change his appearance.  The defense proffered a witness to testify that on the day of the shooting, James had black hair. The prosecution was allowed to impeach the witness with James' illegally obtained statements regarding his hair.  A sharply divided Supreme Court stated that the impeachment exception to the exclusionary rule in <u>Harris v. New York</u>, 401 U.S. 312 (1971) would not be expanded to impeach all defense witnesses.  <u>Id.</u> at 318.  The Court noted that in the case of defendants, impeachment with illegally obtained evidence would further the goal of "truth-seeking by preventing defendants from perverting the exclusionary rule" into a license to use perjury by way of defense.  <u>Id.</u> at 312.  The <u>Harris</u> rule would leave defendants free to testify on their own behalf:  they could offer probative and exculpatory evidence to the jury without opening the door to impeachment by carefully avoiding any statements that directly contradict the suppressed evidence.  Thus, the exception would discourage perjured testimony without discouraging truthful testimony.  <u>Id.</u> at 314.

On the other hand, expanding the impeachment exception to all witnesses would not have the same beneficial effects.  The Court reasoned that the mere threat of subsequent criminal

prosecution for perjury is more likely to deter a witness from intentionally lying on a defendant's behalf than to deter a defendant, already facing conviction for the underlying offense, from lying on his own behalf.  Moreover, this would chill some defendants from presenting their best defense through the testimony of others.

The <u>James</u> rationale and facts have no bearing on this case.  In <u>James</u>, the testimony sought to be used for impeachment of the defense witness went to James' confession of his guilt. Unlike the testimony sought to be impeached in <u>James</u>, Panessa is not seeking to testify on the subject matter of Elliot's confession – statements bearing on Elliot's guilt.  Panessa's testimony <u>does</u> <u>not</u> relate to the subject matter of Elliot's confession but is an attack on the investigative efforts and actions of the law enforcement agents in this case.  If Panessa is allowed to opine on this topic without rebuttal, the jury will be left with a distorted view of the facts and the investigation.

Nor should <u>James</u> be read so broadly as to preclude impeachment of all defense witnesses.  In <u>Wilkes v. United States</u>, 631 A.2d 880 (D.C. Cir. 1993), <u>cert. denied</u>, 513 U.S. 848 (1994), the D.C. Circuit distinguished the <u>James</u> case to allow the government to impeach a defense expert, a doctor, who offered an opinion on defendant's insanity defense.  The doctor testified

10

that Wilkes had limited memory of the crime.  The prosecution was
allowed to cross-examine him on a hypothetical question regarding
suppressed statements the defendant made to police officers
regarding the murder, with the understanding that these facts
would be presented in the government's rebuttal case.  On appeal,
the court found that the James case could not be read so broadly
as to preclude impeachment of all witnesses other than the
defendant.  The court reiterated that a court must balance the
truth seeking function of a trial with the deterrent function of
the exclusionary rule and that the impeachment exception is to
"discharge defendants in the first instance from affirmatively
resorting to perjurious testimony."  Id. at 880.  The court
concluded that the excluded statements directly contradicted what
Wilkes told the doctor and provided the most relevant information
available with which to probe the factual basis of the doctor's
opinion.  The court stated:  "We hold that the truth-seeking
function of this trial was better served by allowing Dr. Saiger
to be cross-examined about the statements than the deterrent
function would have been by their exclusion."  Id.

        Similarly here, to allow Panessa's testimony that the
agent's investigation was flawed because they failed to take
certain steps in connection with the investigation while the
agents are prevented from explaining the reasons for not taking

11

certain steps, specifically that Elliot had already confessed, as had Meston, would totally thwart any truth-seeking function.[3] Cf., People v. Johnson, 50 Cal. Rptr.2d 17 (1996) (James case distinguishable where defense witness testifying about own observations; expert witnesses testifying as to defendant's statements can be impeached with statements made to probation officer).

WHEREFORE, for all the foregoing, the United States requests that defendant's motion be denied.

DATED:  January 29, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By  /s/ Beverly Wee Sameshima
   BEVERLY WEE SAMESHIMA
   Assistant U.S. Attorney

---

[3]  There is no question that Elliot's statements to Tanya Tano are fair game.  The Court did not suppress these statements.

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

        JOSEPH VODNOY, ESQ.     jvonoy@vodnoylaw.com


Served by First Class Mail:

        MICHAEL GREEN, ESQ.
        345 Queen Street, 2nd Floor
        Honolulu, HI   96813

        Attorneys for Defendant
        BASHO ELLIOT

        DATED:  January 29, 2007, at Honolulu, Hawaii.


                  /s/ Dawn M. Aihara