FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FEB 2 5 2004

at $\underline{4}$ o'clock and $\underline{7\ 0}$ min.✓ M
WALTER A.Y.H. CHINN, CLERK

UNITED STATES OF AMERICA,        )   Cr. 03-00244 SOM
                                 )
          Plaintiff,             )
                                 )   ORDER DENYING DEFENDANT'S
. vs.                            )   MOTION TO DISMISS THE
                                 )   INDICTMENT, SUPPRESS
BASHO ELLIOT, aka "Bosch         )   STATEMENTS, AND/OR SANCTION
Elliot,"                         )   THE GOVERNMENT.
                                 )
          Defendant.             )
_____  )

ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE
INDICTMENT, SUPPRESS STATEMENTS, AND/OR SANCTION THE GOVERNMENT.

I.     INTRODUCTION.

          Defendant Basho Elliot alleges that the Government

violated discovery rules by failing to promptly disclose

statements made by the defendant and that his Miranda rights were

violated when police continued interrogating him after he

exercised his rights.[1]  He urges the court to dismiss the

indictment against him, suppress his statements, and/or sanction

the Government.  The court DENIES Elliot's motion because his

_____

[1] Elliot also argued that he had been interrogated prior to
receiving Miranda warnings, and that statements made during this
interrogation should be suppressed.  Elliot argued that a
statement by law enforcement officials urging him to cooperate
constituted custodial interrogation prior to receipt of Miranda
warnings.  Initially the Government argued that the "cooperation
speech" was not interrogation, and therefore Miranda warnings
were not required.  Opp. at 10.  However, at the hearing, the
Government voluntarily agreed not to use these statements in
Elliot's trial in its case in chief.  Should Elliot testify, the
Government reserves the right to offer these statements in
rebuttal.  Given this development, the court need not decide
whether the "cooperation speech" was custodial interrogation.



EXHIBIT A

<u>Miranda</u> rights were not violated and the Government's discovery
violations were harmless and inadvertent.[2]

II.        FINDINGS OF FACT.

        In an effort to rule promptly on the merits and to
avoid the burden on the court's overextended court reporters, the
court did not request and therefore does not have final
transcripts of the live testimony, although the court has "rough"
unedited copies of those transcripts.  Therefore, in referring to
that testimony in these findings of fact, this court is unable to
give exact page and line citations to the testimony.  The court
received testimony from two witness, Honolulu Police Detective
("HPD") Tanya Tano and Liane Curtiss, Elliot's fiance.  Based on
the live testimony and the exhibits received in evidence, the
court finds the following by a preponderance of the evidence.

        A.     On May 6, 2003, Elliot was arrested at his home
for possessing cocaine with intent to distribute it.[3]  A search
of his home uncovered, among other things, approximately $16,000
in cash in a safe.  After his arrest, Elliot was taken to the
back yard of his residence by Tano and Drug Enforcement

        [2] For ease of reference in later proceedings, the court uses
letter designations for the separate findings of fact and
conclusions of law.

        [3] The circumstance leading up to the arrest and details of
the arrest are outlined in the court's order, dated September 30,
2003, denying an earlier motion to suppress.  Those facts need
not be repeated here.

Administration ("DEA") Special Agent Richard Jones. Tano has worked as an HPD Detective for more than twenty years and has spent much of that time working with the DEA at Honolulu International Airport.

B.     With Elliot having received no Miranda warnings at this point, Jones delivered what the Government refers to as the "cooperation speech." Opp. at 8. Jones stated that he wanted Elliot's cooperation in identifying the source of the drugs and other individuals who were distributing drugs. Jones specifically requested that Elliot call the people in California who had sent him the drugs and that Elliot complete the delivery of the drugs in Hawaii. Jones told Elliot that, if he cooperated, Jones would speak to the Assistant United States Attorney ("AUSA") on Elliot's behalf, but that a judge would ultimately decide what consideration, if any, Elliot would receive for his cooperation. Tano witnessed the conversation between Elliot and Jones, but did not take part.

C.     Elliot responded that he could not cooperate because "they" would kill him and his family. Elliot stated that he would take responsibility for the drugs.[4] A police report dated May 19, 2003, signed by Jones, refers to these statements. Elliot Ex. B.

---

[4] These two statements are the statements that the Government has agreed not to use in its case in chief.

3

D.    Jones concluded that Elliot would not
cooperate and read Elliot his Miranda rights.  Elliot then
requested an attorney.  Jones left Elliot, but Tano remained with
Elliot while awaiting transportation to Honolulu for booking.
Tano so supervised Elliot for several hours.  During this time,
Tano and Elliot passed the time with small talk.  They discussed,
for example, a shed in the yard that Elliot had built, and their
respective children.  Tano did not discuss the case against
Elliot.  At one point, however, Elliot told Tano that he was "so
stupid" for doing "this."  Tano told him she could not discuss
the case but that she agreed with his assessment that he had been
stupid.  After a brief lull in the conversation, Elliot
continued, stating that he had tried to take the "easy way" out
of financial trouble.  No further conversation between Elliot and
Tano occurred after this point.  The court finds Tano's testimony
regarding her interactions and discussions with Elliot to be
credible.

E.    On June 9, 2003, Constance Hassel, the AUSA
formerly assigned to this case, filed a report pursuant to Rule
16 of the Federal Rules of Criminal Procedure stating that the
Government knew of no written, recorded, or oral statements made
by Elliot.  Elliot Ex. A.

F.    On December, 4, 2003, Hassel informed Elliot that

4

Jones had just recalled that Elliot had said, "I'll just do the jail time." Elliot Ex. C. This specific statement was not in the relevant police report, but it is consistent with Elliot's statement that he alone was responsible for the drugs and that he would not cooperate. This statement had not been previously disclosed under Rule 16.

G.    On December, 8, 2003, Hassel informed Elliot that, while awaiting transportation, Elliot had told Tano that he was "so stupid" and that he had tried to take the "easy way" out. These statements had not been previously disclosed under Rule 16.

H.    The Government subsequently stipulated to extend the time for Elliot to file motions in light of these delayed disclosures. The trial was continued from December 2003 to February 10, 2004, and further continued by stipulation to April 6, 2004.

I.    Concerned that the Government will offer evidence of the cash found at his home as likely drug proceeds, Elliot argues that the Government's delay in disclosing his statements caused him to misevaluate the case and not realize the need to preserve evidence concerning the cash. Elliot argues that the lost evidence consisted of his young children's now-dim memories of the cash. The children's mother, Curtiss, testified as to her children's knowledge of the approximately $16,000 found in the safe and her children's ability to serve as witnesses. The court

found Curtiss's testimony credible, but ultimately of little
assistance to Elliot.

        J.    Curtiss stated that her children, now ages 10, 6,
and 5, knew at the time of Elliot's arrest that a large amount of
cash was stored at their home and that their grandfather had
provided the cash for the construction of a cottage on the
property.[5]  She stated that she was not sure how much the
children now remembered, because she had not directly discussed
the matter with them.  However, she worried that they might not
recall the details, given a child's short memory.  Curtiss was
confident, however, that at least the older children would
remember that the money was from their grandfather, even if they
did not remember the specifics.

        K.    Curtiss admitted that she was unsure if the
children would have been able to remember the details even six
months after the arrest.  She further testified that her oldest
child has been changed by the arrest, and that she worried that
his being called as a witness at trial would be detrimental to
him.  She stated that the son's behavior started to change about
three or four months after Elliot's arrest, and that she would
have been concerned about his testifying from that point forward.
She testified that she herself also knows of how and why the

---

[5] She was less certain what knowledge her youngest child
had, as she was only 4 years old at the time of the arrest.

money was in the safe, and that she could testify at trial.
Finally, she said that the grandfather, who obviously knows about
money he gave Elliot, lives in Los Angeles and could testify.

III.    CONCLUSIONS OF LAW.

A.    Rule 16 of the Federal Rules of Criminal Procedure
requires that relevant written or recorded statements made by the
Defendant and known by the Government be turned over to the
defense.  Other oral statements made by the Defendant and known
by the Government must also be disclosed.  The Government
concedes that it committed a Rule 16 violation in failing to
disclose Elliot's statements until December 2003.  The parties
dispute the proper remedy for this violation.  Elliot urges the
court to dismiss the charges, suppress the statements, and/or
sanction the Government.  Mot. at 2.  The Government argues that
these remedies are too drastic given the lack of prejudice
resulting from the delay.  Opp. at 5.

B.    The district court has broad discretion to fashion
remedies for discovery violations.  United States v. Spillone,
879 F.2d 514, 522 (9th Cir. 1989).  A continuance or suppression
of the evidence may be an appropriate remedy, depending on the
circumstances of the case.  See Fed. R. Crim. P. 16(d)(2)(B) and
(C).  The sanction should not be harsher than necessary to
accomplish the goals of Rule 16 to allow the defense access to

7

material the Government will use in its case in chief. <u>United States v. Gee</u>, 695 F.2d 1165, 1169 (9th Cir. 1983).

C.      Neither dismissal nor exclusion is warranted by the delay in the present case.[6]  Elliot received the statements in December 2003.  Trial was continued from December 2003 to February 10, 2004, and then again until April 6, 2004.  Elliot has had, and still has, ample time to prepare his trial strategy in light of the late disclosures.  Nor is suppression otherwise appropriate.

D.      Elliot seeks suppression of his statements to Tano.  Elliot says Tano interrogated him after he exercised his right to remain silent.  The court disagrees.  The evidence establishes that Elliot volunteered the statements in issue to Tano.  Spontaneous or freely volunteered statements by a defendant in custody are admissible.  See <u>United States v. Sherwood</u>, 98 F.3d 402, 409 (9th Cir. 1996); <u>United States v. Booth</u>, 669 F.2d 1231, 1237 (9th Cir. 1982).

E.      Tano did not interrogate Elliot.  The court finds credible Tano's testimony that she engaged in small talk with Elliot, but avoided any discussion of the case.  Elliot, of his

---

[6] Sanctions are likewise inappropriate.  The attorney who committed the discovery violations is no longer on the case, and is no longer in the United States Attorneys Office.  There is no reason to sanction anyone else.  This is not to say, however, that the court would have necessarily found sanctions justified against the original attorney had she remained on the case.

8

own volition, commented that he had been "so stupid" for doing "this." Tano responded that she could not talk about the case, but agreed that he had been stupid. This response was not interrogation. Elliot's subsequent comment that he had been trying to take the "easy way" out of financial difficulties was similarly a spontaneous, voluntary statement. Because these spontaneous utterances were not the product of interrogation, no Miranda violation occurred.

F.    Elliot next argues that his statements to Tano should be suppressed as tainted by a preceding Miranda violation in the form of the pre-Miranda "cooperation speech."[7]  The court is unpersuaded.

G.    The exclusionary rule operates differently in the Miranda context than it does in the context of the Fourth Amendment.  Oregon v. Elstad, 470 U.S. 298, 309 (1985).  An initial statement made by a defendant before the issuance of Miranda warnings will taint a subsequent statement made after issuance of Miranda warnings only if the earlier statement was actually coerced.  United States v. Orso, 266 F.3d 1030, 1034-35 (9th Cir. 2001).  A later statement will not be considered

---

[7] The Government will not offer in its case in chief Elliot's statements made after the "cooperation speech." Therefore, the court considers the "cooperation speech" only for the purposes of analyzing whether the statements to Tano were tainted.    The court need not and therefore does not decide whether giving a speech encouraging cooperation by a defendant constitutes custodial interrogation.

tainted even if the earlier statement was obtained in violation of technical Miranda rules, if the earlier statement was voluntary and noncoerced. Id.

H.   The "cooperation speech" was not coercive. See Cunningham v. City of Wenatchee, 345 F.3d 802, 810 (9th Cir. 2003) (mentioning the benefits of cooperation was not coercive); see also United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988) (promising to recommend leniency does not render a confession involuntary). Jones merely mentioned the benefits of cooperation. There is no evidence that Jones threatened Elliot or otherwise did anything rendering Elliot's statements involuntary. Because the evidence before the court shows that Elliot's initial statements were voluntary and not coerced, they do not taint the comments he made after he received Miranda warnings. See Orso, 266 F.3d at 1035.

I.   Elliot, however, argues that he has been irreparably prejudiced by the the Government's delayed disclosure because he has lost the ability to present an innocent explanation for the cash found at his residence through his children's testimony. Lowenthal Decl. at 2. The court is unpersuaded that Elliot has been prejudiced by the delay. First, Elliot knew that he had made these statements before the Government disclosed them. There is less prejudice in such a ·

10

situation than when the Government withholds evidence about which
a defendant has no knowledge.

J.   Second, according to Curtiss, the children still
remember that the money came from their grandfather, the key
point for Elliot's defense, even if they do not remember the
details.

K.   Moreover, Curtiss acknowledged that the children
may not have been able to remember the details six months after
the fact; the trial would have occurred more than six months
after the arrest irrespective of any discovery violation.
Nothing Curtiss said suggests that the children will be less
effective witnesses when the trial occurs than they would have
been had the trial occurred in December 2003, as scheduled before
the belated disclosures.  Curtiss would have hesitated to allow
her children to testify even three to four months after the
arrest.  The trial had been scheduled to begin after this point
irrespective of the delay caused by the discovery violation.

L.   Curtis and the grandfather are able to testify as
to the details of the source of the money.  Therefore, Elliot
will still be able to present this evidence without having to
testify himself.  Any concern that Curtiss and Elliot's father
will be viewed as biased witnesses would also apply to testimony
from his children.

M.   Finally, as there is no evidence that the

11

Government acted in bad faith in delaying disclosure, dismissal or suppression would be unduly harsh.  See e.g., United States v. Finley, 301 F.3d 1000, 1018 (9th Cir. 2002).  Dismissal and suppression are unnecessarily harsh remedies for the inadvertent discovery violation that ultimately has not prejudiced Elliot.

IV.      CONCLUSION

Based on the preceding findings of fact and conclusions of law, the court DENIES the motion to dismiss, suppress, and/or impose sanction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 25, 2004.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

United States of America v. Basho Elliot, Cr. No. 03-00244
SOM/BMK; ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE
INDICTMENT, SUPPRESS STATEMENTS, AND/OR SANCTION THE GOVERNMENT.

12