EDWARD H. KUBO, JR.    #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI   #2286
Chief, Narcotics Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808)541-2850
Facsimile: (808)541-2958
E-mail: Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 2 2 2004

at 9 o'clock and 13 min. A. M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BASHO ELLIOT,        (01)<br>   aka "Bosch Elliot"<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR. NO. 03-00244 SOM<br><br>MOTION IN LIMINE TO EXCLUDE<br>TESTIMONY OF FRANK PANESSA;<br>DECLARATION OF BEVERLY WEE<br>SAMESHIMA; EXHIBIT "A";<br>CERTIFICATE OF SERVICE<br><br><br>Date: April 1, 2004<br>Time: 9:15 a.m.<br>Judge: Susan Oki Mollway |

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF FRANK PANESSA

        The United States of America herein files a motion in

limine to exclude the testimony of Frank Panessa, ("Panessa") a

former DEA agent who the defense has indicated will be proffered

as their expert.

# EXHIBIT B

The government received notice by way of letter dated March 18, 2004 from attorney Richard Gordon that Panessa would be testifying: (1) to rebut the testimony of the government expert; (2) opining on the "conduct of the government investigation in this matter;" (3) opining on the "meaning of the evidence and testimony in this matter" and (4) opining on the "reliability of the evidence and testimony in this matter."  (See Exhibit "A" to the Declaration of Beverly Wee Sameshima).

The government objects to this "expert" testimony on the areas noted and moves to preclude his testimony because: (1) it is for the **finder of fact** to assess the reliability and meaning of the evidence and credibility of the testimony of witnesses in this case; (2) and unless the testimony is relevant to an issue in this matter (e.g. the guilt or innocence of the defendant), or helpful to the jury, it should not be admitted.

In accordance with Rule 16(G), the government by letter dated March 3, 2004 provided the defense with specific areas of testimony about which its expert, Agent Gerald Lawson would testify. (See Exhibit "A" to Defendant's motion in limine to exclude testimony of Special Agent Gerald Lawson).  Defendant's proffered Rule 16 disclosure fails to meet the requirements of Rule 702 or 704 and the testimony should therefore be disallowed.

2

The proffer is not specific and appears to be an attempt to fling general mud on the government's case.  The proffer does not provide the government or the court the basis upon which to determine whether the testimony would be relevant to any issues in the case.  What does appear is that it is a blatant attempt to usurp the jury's role in making findings concerning the credibility and reliability of witness testimony and other evidence in the case.

It appears from the defense proffer that Panessa will seek to given an opinion as to why a particular government witness's testimony should or should not be viewed as reliable and why certain evidence is or or is not reliable.  This is precisely the jury's role.

Rule 704(b), Federal Rule of Evidence provides in relevant part:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

The 1972 Advisory Committee Notes for the section indicate that the rules afford ample assurances against the admission of

3

opinions which would merely tell the jury what result to reach, "somewhat in the manner of the oath-helpers of an earlier day." United States v. Finley, 301 F.3d 1000, 1014 (9th Cir. 2002)(expert testimony compelling jury to conclude defendant did or did not possess requisite mens rea does not assist trier of fact because it encroaches on jury's exclusive function to make credibility determinations).

This appears to be precisely what the defense seeks to do through ex-agent Panessa. United States v. Candoli, 870 F.2d 496, 506 (9th Cir. 1989)(jury decides witness credibility); United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985)(expert witness not permitted to testify as to witness' credibility or to improperly buttress witness' credibility).

The government also objects to Panessa's testimony to the extent that he seeks to offer an opinion as to the inadequacy of the police investigation in this case because such testimony would be neither relevant nor helpful to the jury. United States v. Manning, 79 F.3d 212, 218 (1st Cr. 1996); United States v. Mason, 719 F.3d 1485, 1489 (10th Cir. 1983).

In the Manning case, the defendant, convicted of drug and bomb offenses alleged error in the District Court's refusal to appoint a retired Providence police officer to testify about the inadequacies in the Providence police department's investigation

4

of his case. In particular, the expert would have highlighted the police's failure to test the broken glass of the basement window for fingerprints and trace the origins of the pipe bomb components.  In rejecting the claim, the First Circuit stated that generally expert services are necessary only when the expert testimony was pivotal to the defense (e.g. when a fingerprint alleged to be the defendant's was the primary means of connecting the defendant to the crime).  Expert testimony on the adequacy of the police investigation was neither critical nor necessary to his defense.  Id. at 217-718.  The defendant was charged with using or carrying destructive devices during and in relation to a drug offense and whether or not he manufactured them was not at issue.  The police failures to trace the bomb components were not central to the defense.  Given the eye witness testimony and the physical evidence in the basement and garage and the defendant's fingerprint on a scale, expert testimony on the police's failure to fingerprint the broken glass from the basement window was peripheral to the defense.  The court also noted that defense counsel placed the shortcomings in the police work before the jury by virtue of his cross-examination of the officers.

Finally, the First Circuit noted that the proffered defense expert testimony on whether or not a particular police act or omission was good police practice had the potential of confusing

5

the jury and diverting its attention from its task of assessing

the adequacy of the prosecution's evidence on the issue of guilt.

Id. at 219.  See also, Mason v. United States, 719 F.2d 1485,

1489 (10th Cir. 1983 )(exclusion of defense private detective on

inadequacy of police investigative techniques proper). In

contrast perhaps to a case alleging false arrest and imprisonment

by the police,[1] in which police conduct and investigative

techniques are relevant and at issue, any opinion about the

inadequacy of the officers' investigation herein would serve only

to raise a smokescreen to the issues of defendant's guilt or

innocence.

Moreover, the evidence should be excluded pursuant to

Federal Rule of Evidence 403 because its probative value is far

outweighed by its prejudicial effect.  It is unclear how

Panessa's testimony would be relevant to the issues in this case

other than to tell the jury how it should evaluate the evidence

and to reach a not guilty verdict as to the defendant. Any

testimony on the alleged inadequacies of the officers'

investigation would serve to divert attention from the issues

impacting on the defendant's guilt or innocence. See e.g., United

States v. Miller, 874 F.2d 1255, 1266 (9th Cir. 1989)(403 finding

---

[1]See e.g., Liser v. Smith, 254 F. Supp.2d 89 (D.D.C. 2003); Berry
v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994).

to exclude expert testimony).  Given the present proffer by the
defense, there is no showing that any alleged opinions rendered
by Panessa would be relevant to the issues in this case.

WHEREFORE, the United States requests that the testimony of
Panessa be precluded as such testimony will invade the province
of the jury and its probative value is far outweighed by its
prejudicial effect.  The United States also requests that the
defense provide it and the Court with the opinion Panessa will
render on the general areas noted so that the Court can better
evaluate the relevance of such testimony to the issues in this
case.

DATED: March 22, 2004, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By _____
BEVERLY WEE SAMESHIMA
Assistant U.S. Attorney

7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )    CR. NO. 03-00244 SOM

                                 )

             Plaintiff,      )    DECLARATION OF BEVERLY WEE
                                 )    SAMESHIMA

    vs.                       )

                                 )

BASHO ELLIOT,      (01)    )
    aka "Bosch Elliot"      )

                                 )

            Defendant.      )

                                 )

DECLARATION OF BEVERLY WEE SAMESHIMA

     I, Beverly Wee Sameshima, hereby state:

     1.   I am an Assistant U.S. Attorney for the District of

Hawaii and responsible for representing the United States of

America in this case.

     2.   On or about March 19, 2004, I received a fax letter

from Richard Gordon giving me notice of a defense expert. (A true

and correct copy of the letter is attached hereto and

incorporated herein by reference as Exhibit "A").

     I declare under penalty of perjury that the foregoing

is true and correct.   Executed this _____ day of March, 2004, at

Honolulu, Hawaii.

                                                 _____

                                                 BEVERLY WEE SAMESHIMA

LAW OFFICES
RICHARD H. GORDON
9777 WILSHIRE BOULEVARD, SUITE 1000
BEVERLY HILLS, CALIFORNIA 90212-1969
(310) 278-4301
FAX (310) 270-5689

March 18, 2004

VIA FACSIMILE (808) 541-2958

Beverly Sameshima
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd.
Room 6-100
Honolulu, Hawaii 96850

Re: USA v. Basho Elliot
    Cr. No. 03-00244-SOM

Dear Beverly:

        Pursuant to the schedule set out at the March 8 pre-trial conference, I am writing to disclose to you that Mr. Elliot intends to call Frank Panessa as an expert witness in the trial of the captioned matter. Mr. Panessa was employed by the Drug Enforcement Agency from 1968 to 1995 and will render opinions based on his experience and on his review of this matter which, in summary, will include:

        1. Rebutting the testimony of the government "expert";
        2. Opinions on the conduct of the government investigation in this matter;
        3. Opinions on the meaning of the evidence and testimony in this matter; and
        4. Opinions on the reliability of the evidence and testimony in this matter

        If you have any questions or comments please feel free to contact me.

                                        Very truly yours,

                                        Richard H. Gordon

cc: Phil Lowenthal

EXHIBIT "A"

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was faxed then mailed to the following:

PHILIP LOWENTHAL, ESQ.
33 North Market Street, Suite 101
Wailuku, HI 96793

RICHARD GORDON, ESQ.
9777 Wilshire Boulevard, Suite 1000
Beverly Hills, CA 90212

Attorneys for Defendant
BASHO ELLIOT

DATED: March 22, 2004, at Honolulu, Hawaii.

ORIGINAL

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail: Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 9  2004

at ___ o'clock and ___ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00244  SOM |
| | ) | |
| Plaintiff, | ) | BRIEF OF THE UNITED STATES |
| | ) | REGARDING DEFENSE "OPENING |
| vs. | ) | THE DOOR"; EXHIBIT "A"; |
| | ) | CERTIFICATE OF SERVICE |
| BASHO ELLIOT, | ) | |
| aka "BOSCH ELLIOT," | ) | TRIAL DATE: April 6, 2004 |
| | ) | TIME: 9:00 a.m. |
| Defendant. | ) | JUDGE: Susan Oki Mollway |
| | ) | |

BRIEF OF THE UNITED STATES REGARDING
DEFENSE "OPENING THE DOOR"

The issue is before the court regarding whether the

government should be allowed to go into the Defendant Basho

Elliot's pre-Miranda statements should the defense "open the

door" in connection with Detective Russell Woodward, any of the

government's other witnesses or any other defense witnesses.  The

defense argues that based upon colloquies during the Defendant's

second suppression motion in February 2004, the government is
barred from eliciting any information along these lines unless
the Defendant himself takes the stand and testifies contrary to
his statements.

The government's position remains that it will not
offer the Defendant's pre-Miranda statements affirmatively.
However, if the defense "opens the door" in its cross-examination
of Detective Woodward, or indeed any other government or defense
witness, it should be allowed to go into the fact that the
Defendant gave a confession.  The defense theory of the case
appears to be in part that the government agents failed to take
all investigative steps in the case in order to corroborate John
Meston's testimony or to ensure that John Meston was telling the
truth.  The defense designation of its expert, Frank Panessa, has
as one of the proffered opinions that the agents' failure to
execute a search warrant or search Meston's house was one of the
failures that demonstrate the government failed to corroborate
Meston's story and conduct a thorough investigation.  (See letter
dated April 2, 2004, from Richard Gordon to Judge Mollway and
counsel).

Detective Woodward testified that after agents searched
the Elliot residence and obtained Meston's statement, he and
Detective Tano returned to the Meston house to interview Anita
Yim.  At that time they questioned her and also conducted a

2

"search" of the house.  Detective Woodward would also testify
that the "search" was not a full blown search but Yim allowed the
Detectives to walk through the living room, kitchen and main
areas of the house.  The officers did not search any drawers,
inner closets or cabinets or containers within the house and did
not enter into any of the bedroom areas.  The officers did not
believe that they had probable cause to obtain a search warrant
to conduct a full blown search; the anticipatory search warrant
was not effective because the parcel never entered 116 Kapunakea
Street and Anita Yim did not consent to the search, even though
John Meston did.  The officers also did not believe that there
was a need to obtain a search warrant to conduct a more thorough,
complete search because at that point in the investigation,
they believed that they had solved the case because both Meston
and Elliot had given confessions and their statements
corroborated one another and the evidence which had been
recovered from the Elliot residence also corroborated these
statements.  Therefore, there was no reason to conduct a search
or obtain a search warrant for the Meston/Yim property.  In order
to explain their reasons for not getting a search warrant, the
Detectives would necessarily have to address the evidence of the
Elliot full confession since this was a major factor in their
decision regarding whether or not to further search the Yim home.

3

In <u>United States v. Wales</u>, 977 F.2d 1323 (9th Cir.

1992), the Ninth Circuit held that defense counsel opened the

door to testimony that at the time of his arrest he had in his

suitcase two driver's licenses, one with his picture on it, under

two different names, when he elicited on cross-examination that

various documents which the defendant was carrying on his person

and which were in his briefcase at the time of the arrest were

all legitimate and in defendant's name.  <u>Id</u>. at 1325, citing to

<u>United States v. Segall</u>, 833 F.2d 144, 148 (9th Cir.

1987)(defense counsel opened door to redirect testimony that only

$2,000 remained in defendant's bank account on May 12, 1986, in

cross-examination, creating a false impression that defendant

retained in her bank account funds under investigation until June

9, 1986.)  By going into this area with the Detectives, Elliot

will be creating a false and misleading impression both as to the

state of the evidence at that point in the investigation and the

reasons why a search warrant was not obtained.  Once the defense

opens the door, the government should be allowed to address this

false impression.

        In addition, the government wishes to advise the court

and remind counsel that a similar issue will arise if the defense

attempts to elicit cross-examination or other direct testimony

from its witnesses along the lines that Meston was the main drug

dealer and "kingpin" in this drug deal, not the Defendant.  The

4

way this may arise is if the defense asks the officers questions suggesting that it was all Meston's deal and that Elliot was an innocent dupe.  Based upon the evidence and investigation, the officers would have to respond that they had both Meston's statement and Elliot's statement that "Meston had nothing to do with it."  If the officers cannot respond that one of the reasons they believed that Elliot was the main player in this deal is because of Elliot's admissions, coupled with Meston's detailed statement, a false and misleading impression would also be left with the jury.

In the pre-Miranda statement which Elliot made to Agent Jones which the government will not use affirmatively, Elliot specifically said, in addition to the statement that it was his deal and that he would take responsibility, that neither Liane Curtiss nor Meston had anything to do with it.  (See Exhibit "A".)  Therefore, if defense counsel opens the door to this area with any other witness, the government should also be allowed to address the false impression with Elliot's statements.

DATED: April 9, 2004, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By_____
BEVERLY WEE SAMESHIMA
Assistant U.S. Attorney

A

Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|

5. By: SA Richard Jones
   At Hawaii Airport Task Force

6. File Title

| 7. ☐ Closed  ☐ Requested Action Completed  ☐ Action Requested By: | 8. Date Prepared 05/19/03 |
|---|---|

9. Other Officers: TFO Tanya Tano

10. Report Re: Post Arrest statement of Basho ELLIOT

### DETAILS

1.  Reference the Report of Investigation written by TFO Jeffery Mertens under this case number and file title concerning the controlled delivery and arrest of BASHO ELLIOT and John MESTON.

2.  On 5-5-03, Hawaii Airport Task Force (HATF) conducted a controlled delivery of a parcel, which originally contained 2499 grams of cocaine to 116 Kapunakea Street, Lahaina, Maui. The parcel was later taken to 145 Kaniau Road, Lahaina, Maui. Basho ELLIOT and John MESTON were arrested. A consent search was obtained for their residences and vehicles.

3.  After ELLIOT was under arrest SA Richard Jones asked ELLIOT, as witnessed by TFO Tano, if it was okay to search his residence to include the back shed area where he was arrested and his vehicle. BASHO stated "yes." SA Jones then retrieved a consent to search form and asked BASHO to sign the form. BASHO stated that he did not wish to sign the form and then stated "you are going to search anyway." SA Jones explained to BASHO that it was his choice and if he said no, law enforcement would not search. BASHO then stated that it was ok for law enforcement to search but he would not sign the form.

4.  SA Jones explained to BASHO that he was under arrest for narcotics violations and that SA Jones wanted BASHO to cooperate, as witnessed by TFO Tano. SA Jones further stated that if BASHO would help law

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division | SA Richard Jones | 6-2-03 |
| District | 14. Approved (Name and Title) David Cota Group Supervisor | 15. Date 6/2/03 |
| Other | | |

DEA Form   - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

ι - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.


EXHIBIT _A_

U.S. Department of Justice
Drug Enforcement Administration

| | 1. File No. ~~████████~~ | 2. G-DEP Identifier ~~████~~ |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | |
| | 3. File Title ~~████████~~ | |
| 4. Page  2  of  2 | | |
| 5. Program Code ~~████~~ | 6. Date Prepared 05/19/03 | |

enforcement catch other people that SA Jones would talk to the AUSA
and advise them of his cooperation.  In turn the AUSA would tell the
Judge all of the good things that BASHO did for law enforcement and it
would be up to the Judge if BASHO would receive any consideration for
his cooperation. BASHO asked SA Jones what SA Jones wanted BASHO to
do.  SA Jones told BASHO that he wanted BASHO to call the people in
California that sent the drugs and to complete the delivery of the
drugs to the people in Hawaii.  BASHO stated that he could not do that
because "they" would kill him and his family.  BASHO further stated
that he wished he could help but this was all his "deal" and he would
take responsibility for the drugs.  Furthermore, BASHO stated that his
wife and MESTON knew nothing about the drugs.

5.   SA Jones told BASHO that he was going to read his Miranda rights, as
witnessed by TFO Tano, and that he should refrain from making anymore
statement until his rights were read to him. Furthermore, SA Jones
told BASHO that he should think about telling the truth so that he
could be a good witness in the future.  SA Jones then read BASHO his
Miranda warnings and BASHO asked to speak with an attorney.

INDEXING



DEA Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 3/94 may be used.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was duly served upon the following persons:

PHILIP H. LOWENTHAL, ESQ. **(VIA HAND-DELIVERY)**
RICHARD H. GORDON, ESQ.
33 N. Market Street, Suite 101
Wailuku, Hawaii 96793

Attorneys for Defendant BASHO ELLIOT

DATED: April 9, 2004, at Honolulu, Hawaii.