1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3                              )
    UNITED STATES OF AMERICA,   )   CR 03-00244 SOM 01
 4                              )
            Plaintiff,          )   Honolulu, Hawaii
 5       vs.                    )   April 1, 2004
                                )   9:15 A.M.
 6   BASHO ELLIOT,              )
                                )   Various Motions
 7           Defendant.         )   (Government's Motion in
                                )   Limine to Exclude Testimony
 8   _____)   of Frank Panessa)

 9
                   PARTIAL TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:       BEVERLY WEE SAMESHIMA
                               Office of the U.S. Attorney
14                             PJKK Federal Bldg.
                               300 Ala Moana Blvd. Ste. 6100
15                             Honolulu, HI 96850

16   For the Defendant:       PHILIP H. LOWENTHAL
                               Lowenthal & August
17                             33 N. Market St., Ste. 101
                               Wailuku, HI 96793
18
     Official Court Reporter:  Debra Kekuna Chun, RPR, CRR
19                             United States District Court
                               300 Ala Moana Blvd. Ste. C285
20                             Honolulu, HI 96850
                               (808) 534-0667
21

22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```



EXHIBIT _C_

1    THURSDAY, APRIL 1, 2004              9:27 O'CLOCK A.M.

2         (Government's Motion in Limine to Exclude Testimony of

3         Frank Panessa:)

4              THE COURT:  Okay.  Now, let's look at the

5    government's motion in limine to exclude testimony of Frank

6    Panessa.  And I guess I need a little more clarification.

7    Okay?

8              So the rebuttal of the government expert, I take it

9    that's rebuttal of testimony by Agent Lawson.  Is that correct,

10   Mr. Lowenthal?

11             MR. LOWENTHAL:  Yes.  Correct.

12             THE COURT:  So is the government objecting to Mr.

13   Panessa coming in to rebut testimony by Agent Lawson?

14             MS. SAMESHIMA:  Actually, Your Honor, I guess part of

15   my motion is also -- and I may not have been very specific

16   about it, but I don't believe they have complied with

17   Rule 16(g) because I don't really know what their opinions are

18   and they haven't really provided us with a basis for those

19   opinions.

20             And to the extent -- I think I was very specific in

21   my expert designation to say that Mr. Lawson would testify as

22   to the quantities of the cocaine, the drugs in this case, as to

23   their value, and specifically with respect to modus operandi of

24   parcel -- drug parcels coming in.

25             Now, am I to assume then, if the testimony of Mr.

1  Panessa is to rebut this, that then Mr. Panessa will say, no,

2  everything Mr. Lawson says about the distribution or the amount

3  of the drugs is wrong, that it's not the value he's going to

4  give, and that this is not the modus operandi?  I mean I think

5  their proffer is very general.

6       THE COURT:  Okay.  But here's the problem I have.

7  Your description of Agent Lawson's testimony gives the subject

8  matter, but how can the defense know whether it will

9  specifically dispute, for example, the methods when it doesn't

10 know what methods Agent Lawson will testify to?  I take it your

11 description is the one that you gave in the letter March 3d --

12       MS. SAMESHIMA:  That's correct.

13      THE COURT:  -- 2004.  Okay.  So that certainly gives

14 the subject matter, but he doesn't say -- so what is he going

15 to say the methods are?  It certainly refers to the use of --

16 well, maybe this is what you meant.  The use of private and

17 other mail carriers.  Okay.  And nominees to receive and send

18 drug parcels.  Okay.  So maybe that's good enough on the

19 methods.

20      But what about the value and differences in drug

21 quantities and their use?  How does Mr. Lowenthal know exactly

22 what Agent Lawson will say with respect to the value and

23 differences in drug quantities such that he could know if Mr.

24 Panessa will be challenging the quantity or the value?  So in

25 that regard I think it's unfair to say that, gee, are you going

1    to be rebutting that or not since you didn't give him a

2    specific number.

3            Now, I'll go back to the method, though.   Is Mr.

4    Panessa intending to say that Agent Lawson -- is he being

5    called to rebut testimony by Agent Lawson that the modus

6    operandi of drug distributors is -- often does or sometimes

7    does involve the use of private and other mail carriers and

8    nominees to receive and send drug parcels?

9            MR. LOWENTHAL:  Well, I think you have exactly

10   highlighted the problem when you said often/sometimes.  We

11   don't exactly know what Agent Lawson is going to say with

12   regard to whether it's often, whether it's regularly.

13           THE COURT:  So that's the subject.

14           MR. LOWENTHAL:  Yes.  So we don't know what he's

15   going to say.

16           THE COURT:  Okay.  So Mr. Panessa may rebut Agent

17   Lawson with respect to the frequency that this is an MO used by

18   drug distributors; is that what you're telling me?

19           MR. LOWENTHAL:  Yes.  Because I agree that anything

20   is possible.  So any method of getting something to Hawai'i is

21   a possible method, whether drug dealers are this -- how much

22   weight that should get has to do with how it's characterized by

23   Agent Lawson.

24           THE COURT:  Okay.  Well, I'm going to let Mr. Panessa

25   testify to the extent he is being called to rebut Agent Lawson.

1    Okay?  And, as I understand it, with respect to the method, if
2    the method goes to using private and public mail carriers or
3    having nominees or designees send and receive parcels, as I
4    understand it the challenge will be to whether Agent Lawson
5    really has a basis for saying that that's so frequent that the
6    jury should rightly conclude that that was likely used here.
7    Okay?

8         Now, on the value and the amount, until Agent Lawson
9    comes up with some precise numbers on value and amount I think
10   it's highly unfair to require that Mr. Panessa say he's going
11   to agree or disagree.

12        Okay.  Then let's look at Mr. Panessa's role in
13   opining on the conduct of the government investigation in this
14   matter.  I don't quite know what that means, and so it's hard
15   for me to say whether I'll allow it or not.  I would like for
16   Mr. Lowenthal to tell me what is it you are going to say.  Are
17   you going to say that there was misconduct?  And, if so --

18        MR. LOWENTHAL:  Let me preface my remarks by saying
19   my understanding of how a reasonable doubt may arise is from
20   the evidence or from the lack of evidence --

21        THE COURT:  Pull the mike up.

22        MR. LOWENTHAL:  -- from the evidence or from the lack
23   of evidence.  And as was indicated in the memorandum, the
24   defense in large part rests on the argument that the convicted
25   drug trafficker; namely, John Meston, is not telling the truth.

1   And, therefore, the investigation with regard to Meston

2   conducted by the agents and its sufficiency, what could have

3   been done, what wasn't done, what's routinely done, what wasn't

4   done has a bearing on whether there is now a lack of evidence

5   to verify --

6              THE COURT:  Okay.  So what you are referring to in

7   item number 2, which just says, "Opinions on the conduct of the

8   government investigation in this matter --

9              MR. LOWENTHAL:  Right.

10             THE COURT:  -- is testimony by Mr. Panessa that the

11  government did not sufficiently investigate Mr. Meston.

12             MR. LOWENTHAL:  Correct.

13             THE COURT:  Okay.  And what about opinions on the

14  meaning of the evidence and testimony in this matter, which is

15  the third category that you've identified as an area of

16  expertise that Mr. Panessa will cover?

17             MR. LOWENTHAL:  I would say that that is actually

18  subsumed in rebuttal.  If the government expert gets into that,

19  then I assume we would get into that.  But other than that,

20  nothing separate.

21             THE COURT:  Okay.  So number 3 is part of the

22  rebuttal of Agent Lawson.  So, for example, if Agent Lawson

23  testifies about jargon that drug traffickers use, then you

24  might -- your expert might go into the meaning of that jargon.

25             MR. LOWENTHAL:  Correct.

1          THE COURT:  Okay.  Then number 4 in the letter dated
2     March 18, 2004, from Mr. Gordon says that the fourth category
3     that Mr. Panessa will render an opinion on is opinions on the
4     reliability of the evidence and testimony in this matter.  Is
5     that subsumed in item 2, which went to the conduct of the
6     government investigation in this matter?  It sounds like it
7     might.

8          MR. LOWENTHAL:  Well, it's number 1 and number 2.  If
9     Agent Lawson gets into it, which I think he has in some other
10    cases, then it would be a subject of rebuttal.  Otherwise, it
11    may be covered in 2 with regard to Mr. --

12         THE COURT:  Okay.  So, in essence, there are really
13    only two subjects:  One, you want to rebut Agent Lawson's
14    testimony; and, two, you would like to have Mr. Panessa opine
15    that the government did not sufficiently investigate Mr.
16    Meston.  Within those two categories Mr. Panessa proposes to
17    opine on the meaning of such evidence as Mr. Lawson may opine
18    on and to opine on whether the evidence is reliable because it
19    may not have sufficiently considered Mr. Meston's background.
20    Am I correctly stating this?

21         MR. LOWENTHAL:  Yes.

22         THE COURT:  Okay.  So with that clarification let me
23    allow Miss Sameshima then to talk about the issue of Mr.
24    Meston's background investigation or related matters because it
25    seems to me that's the only thing left.

1           MS. SAMESHIMA:  Your Honor, I think it's a backdoor

2    way in which they're actually attacking the credibility of a

3    witness and having an expert try to tell the jury why a witness

4    should be believed or not, which is not relevant for an expert

5    to testify about.  I mean I think what we're -- I think this is

6    a typical defense tactic to, obviously, throw general mud on

7    the government's case or attack the government agents as having

8    not done either an adequate job or somehow engaged in some kind

9    of not -- he's not going so far as to say misconduct but the

10   agents are not doing -- did not do an adequate job.  And

11   that's -- that's not relevant to whether Mr. Elliot is guilty

12   or innocent.

13           They can attack Mr. Meston's credibility on

14   cross-examination of each and every government agent as well as

15   on the cross-examination of Mr. Meston.  But to have a witness

16   come up, an expert, to say why Mr. Meston should not be

17   believed, based on what they did or did not do, I think is

18   really trying to invade the function of the jury here.

19           THE COURT:  I don't think he's saying that Mr. Meston

20   shouldn't be believed.  Okay.

21           MS. SAMESHIMA:  Well, he's saying it impacts on

22   the --

23           THE COURT:  Yeah, okay.  Can you give me a little

24   more.

25           MR. LOWENTHAL:  Suppose -- let's just suppose that

1   there was something where no fingerprints were taken and

2   fingerprints may have -- the defense would be entitled to

3   present evidence that fingerprints might lead to the

4   responsibles and that fingerprinting can be done under these

5   circumstances and somebody chose not to do that.  That is not

6   an unusual approach in cases, and that may lead to a view on

7   the part of a juror that, hey, there's not enough evidence.

8   They could have --

9              THE COURT:  And what exactly would Mr. Panessa's role

10  be in this hypothetical situation?  Would it be to say

11  fingerprints are routinely taken?

12             MR. LOWENTHAL:  He's an expert, having been a special

13  agent for many, many years, and he could certainly say that in

14  these circumstances they can be taken, they're routinely taken,

15  and, if taken, this is what you can do with them, those kinds

16  of things.

17             THE COURT:  Okay.  But in this hypothetical

18  fingerprint example, what would be the relevance of the failure

19  to take fingerprint evidence?  I mean you would have to, for

20  example, go a step further, wouldn't you, and have Mr. Panessa

21  say, "So I examined the evidence, and I saw these smudge

22  things, and I think there were fingerprints there that now can

23  no longer be tested."

24             I mean I don't understand why it's relevant to say

25  they didn't take fingerprints, unless he can go a step further

```
1    and say, "Had they taken fingerprints, then they could have
2    found X, Y, Z, which is now not findable because they didn't do
3    it then," something like that.  I mean I don't understand --
4              MR. LOWENTHAL:  I suppose he could say that, yeah.  I
5    don't have any problem with that.  I don't know that he
6    needs --
7              THE COURT:  Is he going to say that?
8              MR. LOWENTHAL:  Yes, he would say that.  I don't know
9    that he needs to go that far.  Like on cross-examination I
10   can't imagine they couldn't ask a case agent, "Well, did you
11   take fingerprints or not --
12             THE COURT:  Oh, you can say that.
13             MR. LOWENTHAL:  -- without going further.  Or I could
14   bring on my own expert.  If they said, "No, we didn't," then I
15   could bring on my own expert to say, "Well, what's the
16   significance of anything of not taking fingerprints?  What
17   would fingerprints -- are they takable in a situation like
18   this?"  My expert could say an opinion.
19             THE COURT:  Well, why would that be, though, you see,
20   because I can understand you want to say on cross-examination
21   of the government's agent, "You didn't take them.  Don't you
22   normally take them?  Isn't that routine," and so forth to
23   indicate you didn't do a careful investigation.  But why would
24   an expert then come in.?  Because, first of all, is he just
25   going to repeat that?
```

1          MR. LOWENTHAL:  Well, I just don't always like to

2     have to rely on the government's witness to be my witness;

3     right?  Because --

4          THE COURT:  I don't understand exactly what Mr.

5     Panessa would say in this regard.  And maybe the problem is

6     because we're talking about this hypothetical fingerprint

7     thing, but, if he's really going to say they didn't adequately

8     investigate Mr. Meston's background, what is it specifically --

9     I mean this is an expert; so you're supposed to disclose.  What

10    is it specifically that he's going to say was inadequate?

11         MR. LOWENTHAL:  He's going to say that the way

12    they -- they didn't follow up on Meston the way they followed

13    up on Elliot; and, therefore, we don't know whether Mr. Meston

14    would have had all the accoutrements of being a drug dealer or

15    not.  Well, who is the drug dealer in this case is one of the

16    issues; right?

17         MS. SAMESHIMA:  Your Honor, if I could step in

18    because I'm happy that Mr. Lowenthal threw out the fingerprint

19    hypothetical because in the case that we cited in our brief,

20    the Manning case, First Circuit, that was precisely the facts

21    that were presented.  The First Circuit said it wasn't error

22    for the district court not to allow a police investigator

23    expert to say why fingerprints, you know, should have been

24    taken or not in light of the other evidence that was relevant

25    in the case which showed -- that wouldn't have led to the issue

1    of guilt or innocence of this particular person.

2              And we've got to look at the facts of this case, Your

3    Honor.  The man accepted the parcel.  He had Sirchie powder on

4    his hands, his pocket, his face.  He gave a confession.  We're

5    not going to put in the main -- the first part of it.  We know

6    that.  We've been through that.

7              I mean, really we need to find out if this is just

8    general mud to deflect the jury and to make this a confusion of

9    issues and prejudicial, or is there really something wrong

10   here.  And I would submit, Your Honor, there isn't any.  And I

11   don't think they can come up with any, and I think they have to

12   in order to allow him to testify because, otherwise, they are

13   backdooring, trying to get an expert with many years of

14   experience to tell the jury, "You shouldn't believe Mr. Meston

15   because the officers didn't do this, this, and this."  And

16   that's a backdoor way to say, "Jury, I'm the one that can tell

17   you who to believe and who not to believe."  And that is not

18   relevant, Your Honor, and that's improper, and we think that

19   should not be allowed.

20              THE COURT:  Well, this is what I think should happen:

21   I think it would be fair for both sides to augment their expert

22   disclosures.  I would like the government to -- I'll give you

23   this thing that you're going to have Agent Lawson talk about

24   the MO in terms of --

25              MS. SAMESHIMA:  I'll be happy to do that, Your Honor.

1    I will set forth what he will testify with respect to how much

2    two kilos of cocaine are worth, whether it's a distribution

3    quantity or not, and I'll be happy to do that in writing and

4    give it to Mr. Lowenthal.

5            THE COURT:  And at the same time you don't have to

6    tell me your rebuttal, okay, because it's rebuttal of Agent

7    Lawson, but this other thing about Mr. Meston's investigation,

8    that's not rebuttal, and I need a little more to understand

9    what's going on before I can say that I'm going to allow or

10   disallow that.

11           MR. LOWENTHAL:  That's fair enough.  Here's my

12   suggestion:  My suggestion is, okay, we'll give you a full

13   proffer before the witness testifies.  And it'll be later in

14   the trial.  That way nobody has to disclose anything they don't

15   need to before trial.  Before we have this witness testify,

16   we'll give you a proffer.  Any objections can be made.  It

17   won't take but a minute.

18           THE COURT:  Aren't you supposed to give it -- I

19   mean --

20           MS. SAMESHIMA:  Your Honor, this is not a regular

21   witness.  I can understand Mr. Lowenthal wanting to keep under

22   wraps what his witness is -- this is an expert.  There are

23   different rules for that, and I think what the court is asking

24   is more than fair.  I mean we have a right to put on a rebuttal

25   expert.  We have no idea who we would call at this point.

1       THE COURT:  Yeah, I'm not asking you to disclose, you
2   know, some fact witness that you're going to bring in and tell
3   me what he's going to say.  But there are rules that require
4   disclosure of experts, and the reason for that is that it's not
5   that easy just to get a counter-expert to come in, and we're
6   going to delay the trial.
7       So is there any objection to telling me and the
8   government this and the government telling you and me about --
9   more about Agent Lawson's expert testimony by next week
10  Tuesday?  What's the objection to that?
11      MR. LOWENTHAL:  What time?
12      THE COURT:  Okay.  No objection.  Just time.  Okay.
13  I'll give you until nine o'clock on Tuesday, the same as your
14  other.
15      MR. LOWENTHAL:  Okay.
16      THE COURT:  Okay.  And then let's take a look at
17  this, and probably I'll call both attorneys.  Wait.  Nine
18  o'clock on Tuesday.  Is that when our trial starts?
19      Okay.  I've got to do this differently.  What's
20  today?  Today is Thursday.  Okay.  That doesn't work, then.
21      Can you give it to me by tomorrow afternoon.  That's
22  what I'll do.  I'll change that to tomorrow afternoon.
23      MR. LOWENTHAL:  I can't get back here tomorrow.
24      THE COURT:  When is Mr. Gordon coming in?
25      MR. LOWENTHAL:  He comes in Monday afternoon.

1         THE COURT:  Well, isn't he available by telephone
2    between now and Monday afternoon?

3         MR. LOWENTHAL:  I would hope so.

4         THE COURT:  Yeah.  So I'll give you until four
5    o'clock tomorrow.  I'll change that.  I'm sorry.  And the same
6    on your character witnesses for people other than Mr. Elliot.
7    I'll switch my earlier deadline of Tuesday at 9:00 to Friday at
8    4:00, and that's Friday, April 2d, at 4:00.

9         And then, when I get it at 4:00, since this is right
10   before trial I'm assuming I can get you both on the telephone
11   at 4:15 or 4:30, and I'm sure you'll be there in your offices,
12   and then we'll see what we want to do.  4:15 maybe.  4:15?
13   Good.  Because I have to take my son to the orthodontist by
14   5:00.

15        Okay.  So I'm going to defer ruling on the motion on
16   Mr. Panessa until I know a little more about exactly what it is
17   he's going to testify to with respect to the investigation of
18   Mr. Meston, but today I am ruling that Mr. Panessa may testify
19   in rebuttal of Agent Lawson.

20        So at this point I am granting in part -- I'm sorry.
21   I am denying in part on the government's motion to exclude Mr.
22   Panessa, but I am deferring my decision on whether Mr. Panessa
23   may also testify as to the alleged insufficiency of the
24   government's investigation of Mr. Meston.  And I'm sure our
25   lovely courtroom manager has that down in great detail.

1          Okay.  Now, the motions having been disposed of,

2    let's turn to the trial itself.

3          (Partial transcription concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2           I, Debra Kekuna Chun, Official Court Reporter, United

3   States District Court, District of Hawaii, do hereby certify

4   that the foregoing is a correct transcript from the record of

5   proceedings in the above-entitled matter.

6           DATED at Honolulu, Hawaii, January 19, 2007.

7

8                                    /s/ Debra Chun

9                                    DEBRA KEKUNA CHUN

10                                   RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25