1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3                                    )
     UNITED STATES OF AMERICA,         ) CR 03-00244 SOM 01
 4                                    )
             Plaintiff,                ) Honolulu, Hawaii
 5       vs.                           ) April 5, 2004
                                      ) 8:30 A.M.
 6   BASHO ELLIOT,                     )
                                      ) Continued Hearing on
 7           Defendant.                ) Government's Motion in
                                      ) Limine to Exclude Testimony
 8   _____) of Frank Panessa

 9                    TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                  UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:     BEVERLY WEE SAMESHIMA
                             Office of the U.S. Attorney
14                           PJKK Federal Bldg.
                             300 Ala Moana Blvd. Ste. 6100
15                           Honolulu, HI 96850

16   For the Defendant:      PHILIP H. LOWENTHAL
                             Lowenthal & August
17                           33 N. Market St., Ste. 101
                             Wailuku, HI 96793
18
     Official Court Reporter: Debra Kekuna Chun, RPR, CRR
19                            United States District Court
                              300 Ala Moana Blvd. Ste. C285
20                            Honolulu, HI 96850
                              (808) 534-0667
21

22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```



EXHIBIT E

```
 1   MONDAY, APRIL 5, 2004                8:30 O'CLOCK A.M.
 2             (Telephone conference call in chambers:)
 3             THE CLERK:  Criminal 03-244 SOM, United States of
 4   America versus, defendant 1, Basho Elliot.  This case has been
 5   called for a Continued Hearing on Government's Motion in Limine
 6   to Exclude Testimony of Frank Panessa.
 7             Counsel, please make your appearances for the record.
 8             MS. SAMESHIMA:  Yes.  Good morning, Your Honor.  Bev
 9   Sameshima, Assistant U.S. Attorney, on behalf of the United
10   States.
11             MR. LOWENTHAL:  Good morning.  This is Philip
12   Lowenthal on behalf of defendant, whose presence is waived.
13             THE COURT:  Okay.  His presence is waived.
14             Now, I did get the letter sent at 6:28 or so P.M. on
15   Friday, April 2d.
16             Miss Sameshima, did you get that?
17             MS. SAMESHIMA:  Yes, I did, Your Honor.
18             THE COURT:  Okay.  Now, actually, what I had thought
19   Mr. Gordon was going to do was to recast his description of Mr.
20   Panessa's testimony because he had been so concerned that this
21   was too explicit a road map.  But what came was, insofar as the
22   enumerated items of testimony are concerned, the same as the
23   letter submitted to me earlier on April 2d.  So I take it from
24   that that the defense decided it was okay to send this
25   description exactly as is, even though I gave it a chance to
```

1   rephrase things or redo things, and I thought today's hearing
2   was going to be, you know, concerning that subject.
3          But I take it the defense ultimately decided it was
4   okay to send this description as is.  Am I correct?
5          MR. LOWENTHAL:  I can't -- this is Philip Lowenthal.
6   I can't say what Mr. Gordon decided.  The letter is what it is.
7          THE COURT:  Okay.  But, anyway, it did come, and it's
8   the same enumerated items.
9          I guess my concern is with respect to items 4 and 5.
10  Item number 4 proposes that Mr. Panessa get on the witness
11  stand and testify as an expert that drug dealers and convicted
12  felons are not trustworthy or credible.  He says, "They
13  regularly lie to the authorities and regularly falsely accuse
14  others of criminal activity to avoid their own culpability and
15  obtain a lighter sentence."
16         Now, I have no idea what kind of data he intends to
17  provide to support this, but my concern is that this is not a
18  proper area of expert testimony for him to get up and say, "Mr.
19  Meston is the kind of person who always lies, and so don't
20  believe him."  I mean I really think that's inappropriate.
21  "Mr. Meston is in the class of people who lie."  I mean I think
22  that sounds like what you are going to have him say.
23         Mr. Lowenthal.
24         MR. LOWENTHAL:  Well, I think the D.E.A. agents are
25  circumspect when dealing with co-defendants who are cooperating

```
 1   because indeed in their experience they do minimize their own
 2   responsibility and they accuse others correctly or falsely to
 3   help out their own situation because they're in desperate
 4   straits.  That is I think what all D.E.A. agents know that.
 5            THE COURT:  I'm sorry.  I don't think that went to my
 6   concern.
 7            MR. LOWENTHAL:  I'm sorry.
 8            THE COURT:  But what is Mr. Panessa proposing to say?
 9   Just to say in general drug dealers shouldn't be believed?
10            MR. LOWENTHAL:  Well, not that they shouldn't be
11   believed, but that the D.E.A. agents are skeptical about what
12   they have to say; and, therefore, that's why it becomes all the
13   more important to verify and corroborate whatever it is that
14   they are saying.  They're not exactly -- it's a distinction
15   between them and good citizen informants.
16            THE COURT:  Okay.  Miss Sameshima, you want to be
17   heard on this?
18            MS. SAMESHIMA:  Your Honor, I think the court is on
19   point in terms of your read on it.  What number 4 is trying to
20   do is basically have an expert tell the jury who is reliable
21   and who is credible in this case, and that's their function.
22   And, certainly, the issues that Mr. Lowenthal has mentioned
23   with respect to credibility and what was in the agents' minds
24   and how they view the co-defendant can be done on
25   cross-examination, but an expert cannot tell the jury who or
```

1   what witnesses are more credible than other witnesses. So I
2   think that's an improper area for expert testimony.
3              THE COURT: Okay. Well, I'm just not going to let
4   Mr. Panessa get on the stand and say, as an expert, that he's
5   opining that drug dealers and convicted felons are generally
6   liars. I'm just not going to let him do that. So if that's
7   what number 4 seems to me to be going to and if that's the
8   import of his testimony, I'm not going to -- I don't think
9   that's a proper expert area.
10             Number 5 says that "Mr. Meston received a sweetheart
11  deal for his testimony against the defendant. He wasn't
12  charged for certain of his crimes."
13             Now, the fact of what the deal is presumably can be
14  brought out through Mr. Meston.
15             MS. SAMESHIMA: Your Honor, I would like a proffer as
16  to the basis for this conclusion because, first of all, I don't
17  think there's any evidence that Mr. Meston received a
18  sweetheart deal. I think the parties all know the plea
19  agreement is of record. There's nothing in there -- in fact,
20  Mr. Meston hasn't even been sentenced.
21             THE COURT: Right. I know he hasn't been sentenced,
22  but they're saying that he wasn't charged with certain things,
23  and that's a sweetheart deal.
24             How is this going to happen that Mr. Panessa can
25  characterize this?

1         MS. SAMESHIMA:  And, Your Honor, I'm also concerned
2    because I'm not aware there are any other federal felonies for
3    Mr. Meston.  He has no criminal history other than this
4    particular offense; so I would like to know the basis for this
5    opinion.
6         MR. LOWENTHAL:  Well, obviously, Mr. Meston will
7    testify by the time Mr. Panessa gets on there.  Presumably, he
8    will testify as to his understanding.
9         THE COURT:  Can you speak up.
10        MR. LOWENTHAL:  Yes.  I'm sorry.  Can you hear me
11   now?
12        THE COURT:  Yes.
13        MR. LOWENTHAL:  Presumably, in his testimony Mr.
14   Meston will have testified as to his understanding of his
15   agreement with the government, what he's getting.  And I think
16   the import of this paragraph is that, if he testifies that he
17   is getting a -- that it's his understanding he's getting
18   something that's substantially better than what most people
19   get, then Mr. Panessa was going to be called to characterize
20   what he got and explain that this is a very good deal, this is
21   an extraordinary deal, whatever.
22        THE COURT:  And what is the basis for saying that?
23        MR. LOWENTHAL:  That will be his experience.
24        THE COURT:  Okay.  I'm a little confused.
25        MS. SAMESHIMA:  Your Honor, you know, what it is is

```
 1   they're trying to offer expert testimony on what is clearly
 2   argument based on, you know, what may or may not occur, and
 3   they just can't do that. Again, they're trying to tell the
 4   jury, "This is how you should assess this evidence. This is
 5   the conclusion that you should reach, based on A, B, and C,"
 6   and that's for the jury.
 7            THE COURT: Well, I'll say this: Until I get more, I
 8   can't let Mr. Panessa characterize a plea agreement. First of
 9   all, of course, Mr. Meston hasn't even been sentenced; so, you
10   know, you're going to say he's eligible for a reduction and so
11   forth. It kind of doesn't matter. All that matters is what
12   Mr. Meston thinks is going to happen. It doesn't matter what
13   he's eligible for. So, you know, unless this is fleshed out
14   I'm not going to allow testimony on number 5, which is the
15   proffered testimony by Mr. Panessa that Mr. Meston got a
16   sweetheart deal.
17            Okay. Are there challenges to anything else? The
18   other things I was kind of thinking we'll have to see how it
19   pans out.
20            MS. SAMESHIMA: Your Honor, I still think that with
21   respect to -- I mean I think, as it's written, it's not clear.
22   But, if paragraphs 1 and 2 appear to be testimony by their
23   expert regarding modus operandi, you know, say, number 1 might
24   be characterized as modus operandi, which is not necessarily
25   going to be in rebuttal of Mr. Lawson, I suppose the court
```

```
 1   would probably view them as entitled to do that if it's
 2   relevant.  And same with maybe number 2.  But number 3 again is
 3   a backdoor attempt to really focus the jury or confuse the jury
 4   on an issue that's not relevant in this case.  They're trying
 5   to put the agents on trial.  They're trying to have an expert
 6   say that the agents did not, basically, do a good job.
 7           Now, how does that impact on Mr. Elliot's guilt or
 8   innocence, unless they can make the logical further step to
 9   say, "And if those agents had done the search, Mr. Elliot would
10   not be guilty because ..."  I mean that's what they have to do.
11   They can't just throw it out there and say, "Well, the agents
12   didn't do this, the agents didn't do that, the agents -- how is
13   that relevant to this particular case and investigation given
14   the other evidence?  And I think that's, you know, they're
15   really trying to go astray here, and it shouldn't be allowed.
16           THE COURT:  Well, right now I'm going to let them do
17   this, but they're going to have to tie it up.  Okay.  So for
18   now I'm not going to -- we probably have to revisit this again,
19   but right now I can't tell.  So at this point I'm not going to
20   strike Mr. Panessa, except for those two areas:  One, that drug
21   dealers are liars; and, two, that Mr. Meston got a sweetheart
22   deal.
23           MS. SAMESHIMA:  Your Honor, can I ask about number 9
24   because I'm not sure I understand that.
25           THE COURT:  The government's 404(b) evidence.
```

```
 1              MS. SAMESHIMA:  I thought your court's ruling, and we
 2   had said that we're not going to put it in our case in chief;
 3   so I'm not real clear what that all means.
 4              MR. LOWENTHAL:  I asked Mr. Gordon what he meant by
 5   that, and he was referring to if this comes up in the form of
 6   impeachment, if anything --
 7              THE COURT:  Well --
 8              MR. LOWENTHAL:  -- as it relates to Mr. Panessa.
 9              THE COURT:  I can't hear you, Mr. Lowenthal.
10              MR. LOWENTHAL:  I concur with Miss Sameshima:  I
11   don't see how that really relates to Mr. Panessa.
12              THE COURT:  Okay.  Good.  Then they're withdrawing
13   number 9 for now.
14              MR. LOWENTHAL:  Right.
15              THE COURT:  Anything else?
16              Number 9 being that the government's 404(b) evidence
17   is not consistent with or related to cocaine trafficking.
18   Since it's not going to be in your case in chief anyway, it
19   probably won't even be before the jury at the time Mr. Panessa
20   testifies.
21              MS. SAMESHIMA:  Your Honor, with respect to paragraph
22   7 I would like a proffer as to the basis for the conclusion:
23   Their statement that there's a series of events in Mr. Meston's
24   post-arrest conduct consistent with his reimbursing -- I think
25   I'm entitled to know what the basis of that overall opinion
```

1  might be.

2           THE COURT: You want to respond, Mr. Lowenthal?

3           MR. LOWENTHAL: One moment.

4           It is my understanding that by the time Mr. Panessa

5  takes the stand there will be evidence in the record of Mr.

6  Meston's post-arrest conduct that will be consistent with him

7  having settled with whoever sent the drugs; in other words,

8  taking care of the financial obligation.

9           Normally, these drugs are fronted and have to be paid

10 for. When they're arrested -- when they're seized, somebody's

11 out a bunch of money, and there's either pressure on the

12 recipient one way or another to settle up. Meston, apparently,

13 took steps to make it look like he's the one that settled up.

14 And, of course, the issue in the case is going to be whose dope

15 is this: Is it Elliot's or Meston's or both?

16          THE COURT: Okay. So for all of these things, this

17 is going to be subject to -- I mean this is true for the Mr.

18 Lawson testimony, too. I mean an expert's going to have to say

19 what it is the expert is relying on in terms of a factual

20 basis. Since the expert is not a percipient witness he has to

21 have some idea of the factual circumstances that he's being

22 asked to base an opinion on. So I'm going to have to just wait

23 and see right now.

24          MS. SAMESHIMA: Okay. But, Your Honor, I guess --

25 and I know I've said this time and time again, but for the

```
 1   government it seems to me that these various issues that are
 2   being thrown out there, I mean, obviously, they're still
 3   subject to the 403, and we'd urge the court to really -- I mean
 4   in the context of this case, the probative value and the going
 5   into all these various different areas that really don't --
 6   have very minimal value to the case, I think there's a real
 7   issue there.
 8           THE COURT:  Okay.  Well, for right now I'm just going
 9   to let this ride, and we'll see as the trial goes on.  Okay?
10           MS. SAMESHIMA:  Very well, Your Honor.  Thank you.
11           THE COURT:  Is there anything else?
12           MR. LOWENTHAL:  One quick question.  Tomorrow is it
13   9:00 or 9:30?
14           THE COURT:  9:00.
15           MR. LOWENTHAL:  Okay.  Good.  See you then.
16           THE COURT:  9:00.  Okay.  Thank you.  Goodbye.
17      (Court recessed at 8:53 A.M.)
18
19
20
21
22
23
24
25
```

```
 1                 COURT REPORTER'S CERTIFICATE
 2        I, Debra Kekuna Chun, Official Court Reporter, United
 3   States District Court, District of Hawaii, do hereby certify
 4   that the foregoing is a correct transcript from the record of
 5   proceedings in the above-entitled matter.
 6        DATED at Honolulu, Hawaii, January 19, 2007.
 7
 8                                /s/ Debra Chun
 9                                DEBRA KEKUNA CHUN
10                                RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```