

**U.S. Department of Justice**

*United States Attorney*
*District of Hawaii*

PJKK Federal Building
300 Ala Moana Blvd.., Room 6-100
Honolulu, Hawaii 96850

(808) 541-2850
FAX (808) 541-2958

April 2, 2004

<u>VIA FAX</u>

Honorable Susan Oki Mollway
United States District Court Judge
District of Hawaii
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Philip H. Lowenthal, Esq. (Fax 808-242-1500)
Richard Gordon, Esq.
33 North Market Street, Suite 101
Wailuku, Hawaii 96793

   Re: <u>United States v. Basho Elliot</u>
     Cr. No. 03-00244 SOM

Dear Judge Mollway and Counsel:

  Pursuant to the Court's final pretrial order, the following expert disclosure is made with respect to the testimony of Special Agent Lawson:

  Agent Lawson will testify that the 2003 grams of cocaine which were recovered in this case constitute a distribution quantity. He will also testify that the street value of cocaine in May 2003 on the island of Maui was between $22,000 to $24,000 per kilogram. Agent Lawson will also testify that the cocaine could have been further broken down into ounce quantities for distribution and sold for $1,000 per ounce or approximately $70,000 for two kilograms.

          Very truly yours,

          EDWARD H. KUBO, JR.
          United States Attorney
          District of Hawaii

          By _____
          BEVERLY WEE SAMESHIMA
          Assistant U.S. Attorney



EXHIBIT "A"

```
 1   Q    And Mr. Meston further testified that he was paid
 2   $1500 for being involved in the October '02 transfer and
 3   $2,000 each for the February, March, and April 2nd
 4   transfers.
 5        Now, given that chronology of time, do you have
 6   an opinion about what amount of cash you would have
 7   expected to find at Mr. Elliot's house if Mr. Meston's
 8   story were correct?
 9        THE COURT:  And the date of finding?
10        MR. GORDON:  On May 6th.  Thank you, Your Honor.
11        THE WITNESS:  If each shipment contained two
12   kilos of cocaine and it was cut to double, we would be
13   talking about 16 kilos of cocaine for street distribution.
14   I -- conservatively, I would say that there would have to
15   be at least a net profit of about $150,000.
16   BY MR. GORDON:
17   Q    In addition, Mr. Panessa, does the fact -- not the
18   fact.  Does Mr. Meston's testimony that he received $7500
19   in payments enter into your opinion about how much --
20   A    Oh, yes.
21   Q    -- cash you would have found there on May 6?
22   A    Yes, it does.
23   Q    Why?
24   A    Well, if Meston is saying he was paid $7500, then, if
25   Mr. Bosch was paying Meston $7500, Mr. Bosch would have to
```

**EXHIBIT "B"**

1   at least have made himself 50 or $60,000 easily.

2   Q    In your experience a drug dealer wouldn't pay those
3   kinds of sums to an intermediary, unless he was making a
4   lot more money; is that what you're saying?

5   A    Correct.

6   Q    I will remind you -- this shows perfectly that you
7   are an ex-DEA agent because the last DEA agent who
8   testified referred to Mr. Elliot as Mr. Bosch also.

9        MS. SAMESHIMA:  Objection.  It's unnecessary,
10  these comments, Your Honor.

11       MR. GORDON:  I'm terribly sorry.  I just wanted
12  the witness to refer to the defendant by the proper name.

13       THE WITNESS:  I'm sorry.

14       MR. GORDON:  His name is Bosch Elliot.

15       THE WITNESS:  Elliot.  Okay.  Thank you.

16  BY MR. GORDON:

17  Q    All right.  So in your opinion the amount of cash
18  that was found at Mr. Elliot's home is not consistent with
19  Mr. Meston's allegations?

20  A    No, it's not consistent with it.

21  Q    Now, you have experience, do you not, with both
22  undercover and, in your role as a DEA agent, with
23  shipments of cocaine?

24  A    Yes.

25  Q    In your experience what does the recipient of the