EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808)541-2850
Facsimile:  (808)541-2958
E-mail:  Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00244-01 SOM |
| | ) | |
| Plaintiff, | ) | BRIEF OF THE UNITED STATES |
| | ) | REGARDING UNAVAILABILITY |
| | ) | OF WITNESS; CERTIFICATE OF |
| BASHO ELLIOT,    (01) | ) | SERVICE |
| aka "Bosch Elliot," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BRIEF OF THE UNITED STATES REGARDING UNAVAILABILITY OF WITNESS

        The United States files this brief in response to the

Court's March 2, 2007 Order requesting briefing on the issue of

whether the prior trial transcript of a defense witness,

Francisco Vargas ("Vargas"), should be admitted in the instant

trial in lieu of his testimony because of Vargas'

"unavailability" due to his assertion of the Fifth Amendment

right against self-incrimination.  The Court has also asked for
briefing on the issue of whether the use of such transcript would
adversely affect Vargas because it may further or enhance his
liability for perjury.  In other words, would this affect the
issue of materiality for purposes of a perjury prosecution.  The
government will address its position on both these issues in the
order raised by the Court.

    A.   **Unavailability of Witness under FRE 804(a) and (b)(1)**

       Vargas' transcript would ordinarily be inadmissible as
hearsay, but for a hearsay exception under the Federal Rules of
Evidence.  Fed. R. Evid. 804(b)(1) governs situations where the
declarant is unavailable.  "Unavailability as a witness" includes
situations in which the declarant:  "(1) is exempted by ruling of
the court on the ground of privilege from testifying concerning
the subject matter of the declarant's statement."

       It appears well-settled that this circumstance includes
a witness' assertion of his/her Fifth Amendment right against
self-incrimination.  United States v. Wood, 550 F.2d 435 (9th
Cir. 1976) (witness called by defendant with pending narcotics
charge unavailable due to invocation of Fifth Amendment); United
States v. Benvieniste, 564 F.2d 335 (9th Cir. 1977) (defense
witness called to support defendant's entrapment defense).  See
also, United States v. Slaughter, 891 F.2d 691, 696 (9th Cir.),

cert. denied, 505 U.S. 1228 (1992) (defense witness' statement to defense investigator admissible after witness invoked Fifth Amendment).

On March 2, 2007, Vargas appeared in Court and after taking the oath, asserted his Fifth Amendment privilege to each and every question posed him.  His counsel, William Domingo, confirmed that if called to testify at the trial, Vargas would assert his Fifth Amendment right and refuse to answer any questions.  Under these circumstances, Vargas is unavailable pursuant to Fed. R. Evid. 804(a).

Fed. R. Evid. 804(b)(1) provides a hearsay exception for former testimony if the declarant is unavailable:

> "Testimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Thus, if the government, (the party against whom Vargas' testimony is offered) had an opportunity and similar motive to cross-examine Vargas when he gave that testimony, the transcript can be admitted.  In United States v. Monaco, 735 F.2d 1173, (9th Cir. 1984), the defendant convicted of bankruptcy fraud alleged error in the court's admission of a government witness' prior testimony at a bankruptcy proceeding.  The Ninth

Circuit, discussing Fed. R. Evid. 803(b)(1) found the hearsay evidence properly admitted under Fed. R. Evid. 804(b)(3) as a statement against penal interest, rather than as former testimony because the defendant did not have an opportunity to cross-examine the witness.  The bankruptcy proceeding involved the bankrupt estate of a brokerage house owned by the defendant. Accordingly, the court concluded, the defendant, who was not a party to that proceeding, did not have the opportunity to cross-examine the government witness.  <u>Id.</u> at 1175.  These facts are in contrast to this case where the government did have an opportunity to cross-examine Vargas in the first trial and did so.

In <u>United States v. Salerno</u>, 505 U.S. 317 (1992), the Supreme Court held that former grand jury testimony of witnesses who claimed the Fifth Amendment at trial and were therefore unavailable was not admissible under Fed. R. Evid. 804(b)(1) without a showing of "similar motive."  Defendants were facing fraud and racketeering charges in connection with the allocation of some construction contracts among a "Club" of companies.  Two owners of one of the companies testified before the grand jury under a grant of immunity stating that neither they nor their company participated in the Club.  At trial, the government offered other evidence showing their company was in fact a Club

4

member.  When the two owners were subpoenaed to testify, they invoked their Fifth Amendment privilege and refused to testify. The District Court denied the respondents request to admit transcripts of their testimonies before the grand jury under Fed. R. Evid. 804(b)(1), reasoning that the prosecutor's motive in questioning a witness before the grand jury is different from his motive in conducting the trial.  Id. at 317.  On appeal, the convictions were reversed, the Court of Appeals holding that exclusion of the testimony was error – that the "similar motive" requirement under the rule should evaporate to maintain "adversarial fairness."  Id. at 323.

The Supreme Court reversed this decision and remanded the case for consideration of whether the United States had a similar motive in questioning the witnesses before the grand jury as in the trial.  Id. at 324-325.  On remand, the Second Circuit concluded that the government had a similar motive in the grand jury as it did at the trial and that a review of the grand jury testimony indicated that the government's examination of the witnesses there was the equivalent of what would have been done if the opportunity to examine them had been presented at trial. Accordingly, the court found that the "similar motive" and opportunity to cross-examine requirements under Fed. R. Evid.

804(b)(1) were met.  United States v. Salerno, 974 F.2d 231, 240 (2nd Cir. 1992).  The prior testimony should have been admitted.

In this case, the government cannot justify an argument that it would have had a different motive in cross-examining Vargas at the first trial than it would have in this trial.  The issues here and in that first proceeding are identical and relate to Elliot's guilt or innocence.  In the first trial, Vargas offered an innocent explanation for Elliot's calls to the Michelle Alvarez California phone number to contradict John Meston's testimony that the calls related to the FedEx drug parcel.  The government cross-examined Vargas about his testimony, seeking to impeach him by highlighting the improbability of his testimony.  The government is hard pressed to say that its motive and opportunity for cross-examining Vargas are not the same now as it was the first time around.

The government believes that it is at a great disadvantage in not having Vargas' live testimony for this trial as it was the government's view that his demeanor and manner of testimony in the first trial underscored his lack of credibility. Unfortunately, Fed. R. Evid. 804(b)(1) explicitly permits introduction of former testimony, despite the fact that the opportunity to view demeanor is lost.  See, Advisory Committee Notes, Rule 804(b)(1), cited in United States v. King, 713 F.2d

627 (11th Cir.), cert. denied, McGlocklin v. United States, 466
U.S. 942 (1984).  In fact, the committee notes provide that the
opportunity to observe the witness' demeanor is lacking in the
case of all hearsay exceptions.  Id. at FN 8.  The King case
involved a retrial after a mistrial.  Between the mistrial and
the second trial, the key government witness was killed in a car
accident.  The district court excluded the witness' trial
testimony under Fed. R. Evid. 403, despite its finding that the
testimony qualified as admissible hearsay under Fed. R. Evid.
804(b)(1).  The district court reasoned that it constituted
unfair prejudice for the government to present its testimony from
a cold reading of the trial transcript.  Without seeing and
hearing the witness himself, the jury could not fairly judge his
credibility.  Id. at 629.  In finding that this was an abuse of
discretion, the Eleventh Circuit held that the court struck an
improper balance in excluding the testimony despite evidence to
suggest that the witness' demeanor was more important to an
evaluation of his credibility than one would expect of the
average witness.  "Defense counsel portray Campbell as a
'smirking' witness, displaying a certain disdain for the entire
trial proceeding."  Despite this, the court concluded that
without the witness, the government had no case and therefore the

probative value of the witness "is as high as it possibly could
be." Id. at 632.

This Court could conceivably exclude Vargas' former
testimony under Fed. R. Evid. 403 after balancing the probative
value of the testimony against its prejudicial effect.  On the
one hand, the probative value is high in that Vargas appears to
be one of two defense witnesses who has first hand knowledge or
participation in some of the events forming the basis for the
charges.  Liane Curtiss Elliot also claims to have received a
call from John Meston on the date of the arrest, but the value of
her testimony as the defendant's loving wife can be discounted.
The probative value of Vargas' evidence can be balanced against
the fact that Vargas' testimony is so misleading and incredible
that to re-offer it in this trial would be contrary to any search
for truth – one of the goals of a trial.  Despite this laudable
goal, it is unlikely that under the circumstances of this case,
the Ninth Circuit would tip the balance under Fed. R. Evid. 403
in the government's favor and the government does not want to
retry this case.

The government could find no applicable law to support
the argument which it wishes to advance – that Vargas' former
testimony should be excluded.  Accordingly, the government
believes that it would be an abuse of discretion to exclude

Vargas' former testimony under Fed. R. Evid. 804(b)(1) or Fed. R. Evid. 403.

> B. **Whether Admission of Vargas' Testimony Would Adversely Affect Him in Any Way.**

This Court also raised the issue of whether the fact that the first case ended in a mistrial would provide Vargas the defense that his testimony was immaterial and therefore not perjurious.  If so, would admission of that same testimony in this trial be material should a different result occur, thereby eliminating Vargas' potential defense to a perjury prosecution.

The elements of a perjury offense under 18 U.S.C. § 1621 are:  (1) that the defendant testified under oath orally; (2) that the testimony was false; (3) the false testimony was material to the matters at the trial; and (4) the defendant acted wilfully and with knowledge that the testimony was false.  (Ninth Circuit Model Criminal Jury Instruction 8.110.)

Materiality is to be judged in terms of its potential for obstructing justice at the time the statement is made, rather than in terms of whether it actually misled the court or trier of fact.  United States v. Martinez, 855 F.2d 621, 622 (9th Cir. 1988).  In the Martinez case, the defendant was charged under two different perjury statutes:  two counts of making false statements to government agents under Section 1001, Title 18,

when he lied to a Customs official about his citizenship at the
Arizona port of entry and one count under Section 1623, Title 18,
when he lied to a magistrate about his financial eligibility for
counsel.  In discussing the element of materiality, the Ninth
Circuit noted that in the grand jury context, a false statement
is material if it is relevant to any matter before the grand jury
and if its falsity would have the natural tendency to influence
the grand jury's investigations.  "The government need not show
that the falsity in fact impeded its inquiries; it is enough if
it has a tendency to influence, impede, or hamper a tribunal from
pursuing its investigation," citing to United States v. Prantil,
764 F.2d 548, 557 (9th Cir. 1985).  Id. at 623.  Materiality is
tested as of the time the false statement is given.  Later proof
that a truthful declaration would not have helped the government
does not make the statement immaterial.  Id.  The court concluded
that the proper test is to judge materiality in terms of its
potential for obstructing justice at the time the statement is
made, rather than to determine whether it actually misled the
court.  Id.; United States v. Lococo, 450 F.2d 1196, 1199, n.3
(9th Cir.), cert. denied, sub.nom, Lococo v. United States, 406
U.S. 945 (1972).  The government does not have to prove that the
perjured testimony actually impeded the investigation; it is
material if it is relevant to any issue under consideration by

the tribunal.  Id. at 1198; United States v. Percell, 526 F.2d 189, 190 (9th Cir. 1975).

In United States v. Ponticelli, 622 F.2d 985 (9th Cir. 1980), the defendant was indicted on two counts of making a false declaration before a grand jury.  On appeal, he contended there was insufficient evidence of the materiality of his allegedly perjurious statement, because the grand jury foreman testified that, prior to his appearance, the grand jury already knew enough to indict the target for making ursurious loans.  The Ninth Circuit rejected this defense, stating that the argument misperceived the proper test of materiality in perjury cases. "The government need not show that the false testimony actually impeded the grand jury investigation or that it related to the primary subject of the investigation.  It is sufficient for the government to prove that the testimony was relevant to any issue under consideration by the grand jury.  If the falsity of the testimony would have the natural tendency to influence the grand jury's investigation, it is material." Id. at 988-989.

In this case, Vargas' testimony was material because it was relevant to Elliot's guilt or innocence, the primary issue in the case.  Under the applicable law, Vargas does not have a defense in a perjury prosecution that his testimony was immaterial because it was not the cause of the mistrial.  The

government does not have to prove that the perjury affected the outcome of the proceeding.  See Lococo, supra, at 1199; Percell, supra, at 190; Ponticelli, supra, at 989.  Materiality is tested as to whether the perjurious statement related to a material or primary issue in the proceeding.  There is no question that Vargas' testimony was material:  he testified about information which sought to exculpate the defendant.  The fact that the trial in which he gave testimony ended in a mistrial does not eviscerate any liability he may have for perjury at that trial. Materiality is assessed at the time the testimony was originally given and does not depend on the outcome of that trial.  The government does not have to prove that Vargas' perjury was the cause of either a mistrial, or potentially, an acquittal.  In short, admission of Vargas' prior testimony in this trial would neither lessen nor increase Vargas' exposure to perjury charges. His liability is assessed as of the date of his testimony in April 2004 and this Court's determination of whether such

//

//

//

//

//

//

12

testimony should be admitted or excluded will have no effect on any potential perjury charges Vargas may face.

DATED:  March 5, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By  /s/ Beverly Wee Sameshima
   BEVERLY WEE SAMESHIMA
   Assistant U.S. Attorney

13

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods
of service noted below, a true and correct copy of the foregoing
was served on the following at their last known addresses:

Served Electronically by CM/ECF and by hand-delivery:

Joseph Vodnoy, Esq.       jvodnoy@vodnoylaw.com

Attorney for Defendant
BASHO ELLIOT

Served by facsimile:

Michael Green, Esq.

Local counsel for Defendant
BASHO ELLIOT

DATED:  March 5, 2007, at Honolulu, Hawaii.


                       /s/ Dawn M. Aihara